UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-20854-CIV-SIMONTON

CONSENT CASE

KELLY PHILLIPS and EDEL LEON,   )
                                )
          Plaintiffs,           )
     vs.                        )
                                )
MITCHELL'S LAWN MAINTENANCE     )
CORPORATION and                 )
MITCHELL IGELKO,                )
                                )
          Defendants.           )
_____)

**OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS FOR FAILURE TO DISCLOSE AND FOR FAILURE TO FURNISH A WITNESS LIST WITH MEMORANDUM OF LAW**

**COMES NOW**, the Plaintiffs KELLY PHILLIPS AND EDEL LEON (the "Plaintiffs"), by and through undersigned counsel, and hereby submits their Opposition to Defendants' Motion for Sanctions for Failure to Disclose and for Failure to Furnish a Witness List with Memorandum of Law ("Sanctions Motion") and states as follows:

MEMORANDUM OF POINTS AND AUTHORITIES

**I. Introduction**

The gist of said Sanctions Motion is that Plaintiffs' counsel should have known that there was no merit in regard to some of the claims brought, and therefore should be sanctioned. Plaintiffs assert that sanctions are inappropriate, particularly sanctions moved for under the Court's inherent authority. The inherent authority of the Court to issue sanctions is intended for wholly different conduct than what is accused.

**II. Facts**

Plaintiffs filed their Complaint on March 11, 2013 [DE 1]. These claims were amended on November 24, 2014 [DE 88]. In the Amended Complaint, Plaintiffs allege many counts of Florida slander based on separate slander events which were reported by Plaintiffs to their counsel.

Early in this litigation, Plaintiffs memorialized what they conveyed to Plaintiffs counsel. Plaintiffs both executed an affidavit swearing to the truth of their allegations. *See* attached as Exhibit A, the "Affidavit of Kelly Phillips"[1] ("Joint Affidavit"). In the Joint Affidavit, Plaintiffs swore:

- "During the course of my tenure of employment with Mitchell's Lawn Maintenance Corporation, I came to know Victor Cifuentes as a hydraulic sales vendor who did business with Mitchell's Lawn Maintenance Company." Id. at § 16.
- "Mr. Cifuentes advised Plaintiff Leon that Defendant Igelko was representing to many people in the lawn care industry that we had stolen from him and were unemployable based on the same." § 18.
- "I know Vichith Phanitdasack as the owner of Sushi Lico." § 19.
- "During a visit to Sushi Lico for a meal, I as advised by Mr. Phanitdasack that Defendant Igelko, to whom he referred to as the "crazy man", had previously been in the restaurant and accused me and Plaintiff Leon of stealing more than one million dollars from his company in front of staff members and other patrons." § 20.

Plaintiffs' claims that Mr. Igelko was saying false and negative things regarding Plaintiffs can hardly be considered implausible. As later confirmed at various depositions taken and other witnesses cited by Plaintiffs – Mr. Igelko seemed to be telling just about everybody with ears that Plaintiffs stole over a million dollars. [DE 123-5 at 9].

Defendants are now alleging that there is no factual support for four of the twenty counts because two of the counts' witnesses have recanted during depositions which took place on January 16, 2015. The remainder seem to have confirmed the slander, in whole or in part. There

---

[1] While titled only as the Affidavit of Kelly Phillips, both Ms. Phillips and Mr. Leon executed the affidavit and specifically enumerated which accusations each had personal knowledge of.

can be little doubt that the testimony elicited by these particular witnesses, Victor Cifuentes and Vichith Phanitdasack, did not go in Plaintiffs' favor. Plaintiffs assert that for some reason these two witnesses have recanted or otherwise forgotten. It is also possible that their financial relationship with Mr. Igelko affected their testimony. *See* Deposition of Victor Cifuentes at at 27 [DE 122-5]. Recognizing Defendants' counsel's propensity to accuse Plaintiffs' counsel of misconduct, Plaintiffs executed affidavits shortly after the deposition. See attached as Exhibit "B", Affidavit of Kelly Phillips ("Phillips Affidavit") and attached as Exhibit "C" the Affidavit of Edel Leon ("Leon Affidavit").

In the Phillips Affidavit, Ms. Phillips reaffirms the circumstance in which Vichith Phanitdasack and Victor Cifuentes told Ms. Phillips of Mitchell Igelko's slander. §§ 10-18. In the Leon Affidavit, Mr. Leon corroborated the statements of slander by Messrs. Phanitdasack and Cifuentes. §§ 10-14.

Plaintiffs continue to stand by their accusations that Defendants did slander Plaintiffs regarding Mr. Phanitdasack and Mr. Cifuentes. The undersigned counsel agreed that they were unlikely to be successful in trial on the claims if Mr. Phanitdasack and Mr. Cifuentes remained recalcitrant due to evidentiary problems (hearsay, etc.). If Plaintiffs unilaterally withdrew those claims, Plaintiffs reasonably were concerned that Defendants would attempt to use the withdrawal against them, without Plaintiffs having the opportunity to argue that slander did in fact happen.[2] So, Plaintiffs requested that Defendants leave these witnesses out of the case entirely. [DE 122-4].

Defendants have frequently requested that "[t]he lawsuit should have never been brought" [DE 122-2], "Kelly Phillips is <u>not</u> telling you the truth, and neither is Edel Leon" [DE

---

[2] It should be noted that Defendants requested that Plaintiff "withdraw" these claims regarding Messrs. Cifuentes and Panatsdick, not "consent to summary judgment on them." The withdrawal of the claims would create an inference that Plaintiffs made up the claims, which would be cited to and exploited by Defendants. Defendants' counsel confirmed this plan, implicitly through not accepting Plaintiffs offer to leave them out of the litigation, as well as explicitly.

122-3], and otherwise generally accused Plaintiffs entire case as being meritless. However, Plaintiffs did not receive any notice regarding the sanctions sought prior to the Sanctions Motion being filed. No Rule 11 "safe harbor" letter was delivered. Further, the "Certificate of Good-Faith Conferral and Service Under Rule 5" is false, to the extent that it suggests that Defendants conferred regarding their sanctions motion. Defendants' counsel has told Plaintiffs' counsel that they think Plaintiffs are liars, and have further discussed the withdrawal of certain counts, but never disclosed that this particular sanctions motion was being brought or made any attempt to have a compromise on the sanctions issue.

## II.     Argument

Defendants seem to merge/confuse the concepts of inherent authority and Rule 11 sanctions. Particularly, Defendants on p. 17-18 of their brief cite Rule 11 as the source of duties from which inherent authority can enforce. This is not so – inherent authority is its own unique sanctioning authority and demands a certain level of bad faith that does not exist in this circumstance at all. Plaintiffs below (a) delineates sanctions derived from "inherent power", and then (b) explains why the conduct alleged is not sanctionable.

### a. Inherent Authority is a Particular Brand of Sanctioning Power and Does Not Rely On, nor is Defined By Rule 11 or Other Ethical Rules.

Defendants muddle together concepts of ethical duties, Rule 11, and Rules of Professional conduct to buttress the argument that sanctions under inherent authority are appropriate. This is not appropriate, because inherent authority is not a catch-all provision intended to grasp every type of negative conduct – it is intended to protect court proceedings and the sanctity of the court, not a tool to shift attorneys' fees. While some of the case citations and statutes regarding Rule 11 and professional conduct can help the analysis of factors of inherent authority, like "frivolous" and "bad faith", they do not in fact *define* the inherent authority of this Court. Inherent authority, Rule 11, and the Rules of Professional Conduct are distinct concepts

and sources of sanctioning authority, and should be treated as such. The mixing together of these concepts makes inherent authority appear to be extremely broad for Defendants' benefit, but when inherent authority is properly defined, it should be apparent that it does not apply.

Fed.R.Civ.P. Rule 11 describes that when an attorney represents something to the court, a "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ." (b).  Relevantly, the attorney is certifying to the best of her knowledge the "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Id.

However, there are special requirements for Rule 11 sanction, often called "safe harbor."

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11.

"Rule 11 focuses on specific abuses and is not limited to willful conduct; in contrast, the inherent power reaches the full range of litigation misconduct, but authorizes fee shifting only for bad-faith conduct or willful disobedience of a court's orders." Thomas E. Baker, <u>The Inherent Power to Impose Sanctions: How a Federal Judge Is Like an 800-Pound Gorilla</u>, 14 Rev. Litig. 195 (1994-1995).  "Rule 11 permits attorney's fees 'for conduct which merely fails to meet a reasonableness standard,' in contrast to a court's inherent powers, which require a higher showing." <u>Amlong & Amlong, P.A. v. Denny's, Inc.</u>, 500 F.3d 1230, n1 (11th Cir. 2007) *citing* <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 47 (1991).  "Traditionally the sanctioning tools have worked in tandem. When the conduct at issue is not sanctionable under Rule 11, the court's inherent power fills the gap to punish the offender." Daniel H. Fehderau, <u>Rule 11 and the Court's</u>

Inherent Power to Shift Attorney's Fees: An Analysis of Their Competing Objectives and Applications, 33 SANTA CLARA L. REV. 701 (1993).

The Courts' inherent powers have been defined in the landmark US Supreme Court case, Chambers v. NASCO, Inc., 501 U.S. 32 (1991). It describes:

> [A] court may assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy [internal citations omitted]."

Id. at 45-46.

For the Court to be justified in exercising its inherent authority to sanction an attorney for a factually baseless claim, the matter must first, (i) be completely frivolous, and second, (ii) must be made in bad faith.

The inherent power should not be used simply because a case is weak – sanctions are only appropriate when a cursory review shows that the factual support is wholly frivolous. This Court has explained, "[s]anctions are not warranted under any of the above theories merely because a plaintiff has not met his burden of proof." Brandt v. Magnificent Quality Florals Corp., No. 07-20129-CIV-HUCK, 2009 WL 899925, at *5 (S.D. Fla. Mar. 31, 2009) aff'd, 371 F. App'x 994 (11th Cir. 2010).[3] "Thus, where no evidence or only 'patently frivolous' evidence is offered to support factual contentions, sanctions can be imposed. If, however, the evidence

---

[3] *Citing* Davis v. Carl, 906 F.2d 533 (11th Cir.1990) (reversing District Court's award of Rule 11 sanctions where evidence was merely weak and plaintiffs used poor judgment in pursuing claims, but evidence was not patently frivolous); Capital Factors, Inc. v. General Plastics Corp. (In re General Plastics Corp.), 170 B.R. 725, 732 (S.D.Fla.1994) ("failure of proof at trial is not necessarily sufficient to support the imposition of sanctions").

supporting the claim is reasonable, but simply '*weak*' or 'self-serving,' sanctions cannot be imposed." Thompson v. RelationServe Media, Inc., 610 F.3d 628, 665 (11th Cir. 2010).

When a claim is found to be completely frivolous, the analysis turns to the attorneys' conduct that brought it. Id. "The key to unlocking a court's inherent power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998). Bad faith is an inherently difficult concept to define, but cases tend to describe it as activity where a litigant purposefully abuses the court process.

"A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." Id, *see also* Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225-26 (11th Cir. 2003); Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1576 (11th Cir. Fla. 1995).

"In assessing whether an award is proper under the bad faith standard, the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." Bernal v. All Am. Inv. Realty, Inc., 479 F. Supp. 2d 1291, 1335 (S.D. Fla. 2007) *quoting* Allapattah Servs., Inc. v. Exxon Corp., 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005); *see* Threat Properties v. Title Ins. Co. of Minnesota, 875 F.2d 831, 835 (11th Cir.1989)("The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted.").

Inherent authority, as a power to sanction, should not be an oppressive force against claims so that attorneys cannot risk being wrong for fear of sanctions. "Although we agree that counsel's professional judgment and common sense should discourage certain claims, in most cases we prefer that an attorney feel free to exercise that judgment without fear of reprisals

should his lawsuit miscarry." <u>Davis v. Carl</u>, 906 F.2d 533, 538 (11th Cir. 1990)[4]; *see also* <u>Lino L. Alphonso v. Pitney Bowes, Inc. and Norm Sommer</u>, 356 F. Supp. 2d. 442  (Dist. N.J. 2005)

Additionally, inherent authority should be narrowly tailored to protect the courtroom, and not overreach into other type of conduct.

> Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities. The extent of these powers must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority. In many instances the inherent powers of the courts may be controlled or overridden by statute or rule. Principles of deference counsel restraint in resorting to inherent power and require its use to be a reasonable response to the problems and needs that provoke it [internal citations omitted].

<u>Degen v. United States</u>, 517 U.S. 820, 823-24 (1996).

**b.  The Complained of Conduct is Not Sanctionable**

This Courts' inherent authority is broad, but this is not a power intended to sanction litigants who brought weak claims.  In this instant matter, Counts IV-VI of the Amended Complaint have turned out to be weak, but not meritless.

Plaintiffs counsel was justified by relying on the statements (which were later sworn to) by Plaintiffs.  Mr. Igelko had already been found to have performed retaliatory activities against Plaintiffs.  He had made false claims in a law suit.  He made false claims in trial regarding the arrest of Plaintiffs.  There is video of him making these same false claims [DE 123-4 at 5].  A reasonable inference is that this conduct occurred as stated by Plaintiffs Slander inherently does not usually leave a trail of evidence, except for witnesses, which Plaintiffs counsel could easily procure and negate the claims made.

Witnesses Messrs. Cifuentes and Panatsdick gave very poor testimony at a deposition, and either recanted or forgot about the interactions they had with Mr. Igelko.  While Plaintiffs'

---

[4]  <u>Davis</u> refers to Rule 11, but the principle that litigants should have some freedom to pursue weak claims should apply equally in all sanction matters.

counsel have the sworn affidavits of Plaintiffs to the contrary, this was not able to be further substantiated. So, the issue remains a question of fact as to the truth of these witnesses testimony. No further evidence has been found to support the claims regarding Messrs. Cifuentes and Panatsdick (such as another witness that overheard said slander appearing). Nevertheless, the remaining witnesses have generally confirmed that they were told negative things by Mr. Igelko about Plaintiffs. Thus, the evidence is "weak" not "frivolous" for these claims.

Plaintiffs statements that corroborated with past conduct by Defendants, should be more than enough so that the claims are not *frivolous* as described above. As described by Thompson and other authority above, when evidence supporting the claim is reasonable, but simply "'*weak*' or 'self-serving,' sanctions cannot be imposed." Thompson v. RelationServe Media, Inc., 610 F.3d 628, 665 (11th Cir. 2010), see Brandt v. Magnificent Quality Florals Corp., No. 07-20129-CIV-HUCK, 2009 WL 899925, at *5 (S.D. Fla. Mar. 31, 2009).

This litigation does not depend on these two witnesses – instead these individuals are only part of a series of slander discovered by Plaintiffs, as well as retaliatory conduct done to Plaintiffs. Following the depositions at issue in which Messrs. Cifuentes and Panatsdick, all litigants focused their efforts on the remaining causes of action in which Plaintiffs had stronger arguments. Consequently, it cannot be said that Plaintiffs pursued the case in bad faith. Plaintiffs did not use these claims to waste time or the courts' resources.

Motions for Summary Judgment and Rule 11 are designed to eliminate issues for trial. The inherent authority of the court was not designed for, nor should it be used in eliminating claims that are weak. Such authority should only be brought when the sanctity of the court is at issue or some other fraud has occurred.

**III.    Conclusion**

The Defendants attempt to use the inherent authority of this Court to punish Plaintiffs for bringing a claim which later turned out to be weak. This essentially is a method of fee shifting to

make a litigant liable for unsuccessful claims, and goes against the "American System." The inherent authority of courts is specifically intended for other sort of conduct, in which the litigants acted with malicious scienter. Plaintiffs merely maintained a claim that was weak, and should not be sanctioned for doing so.

WHEREAS, Plaintiffs request that the Court deny Defendants' Motion for Sanctions for Failure to Disclose and for Failure to Furnish a Witness List.

Submitted this 21st day of May, 2015.

                                                          Respectfully submitted,

                                                          J.H. Zidell, P.A.
                                                          Attorney for Plaintiffs
                                                          300 71st Street, Suite 605
                                                          Miami Beach, Florida 33141
                                                          Tel: (305) 865-6766
                                                          Fax: (305) 865-7167

                                                          By:__/s/ E.O.Hueber
                                                          Elizabeth Olivia Hueber
                                                          Florida Bar No.: 0073061

**CERTIFICATE OF SERVICE:**

  I hereby certify that a true and correct copy of the foregoing Plaintiffs' Opposition to Defendants' Motion for Sanctions for Failure to Disclose and for Failure to Furnish a Witness List with Memorandum of Law was served via CM/ECF to Daniel A. Espinosa, Esq. 4300 Biscayne Boulevard, Suite 305, Miami, Florida 33137, Fax: (305) 717-7539, email: despinosa@ejtrial.com, Rafael Viego, III, Esq., ESPINOSA | JOMARRON, 4300 Biscayne Blvd., Suite 305, Miami, Florida 33137, Fax: (305)717-7539, Email: rviego@ejtrial.com on this 21st day of May, 2015.

                 Respectfully submitted,

                 J.H. Zidell, P.A.
                 Attorney for Plaintiffs
                 300 71st Street, Suite 605
                 Miami Beach, Florida 33141
                 Tel: (305) 865-6766
                 Fax: (305) 865-7167

                 By:__/s/ E.O.Hueber
                 Elizabeth Olivia Hueber
                    Florida Bar No.: 0073061