## AFFIDAVIT OF KELLY PHILLIPS

STATE OF FLORIDA         )
                         )   S.S.:
COUNTY OF MIAMI-DADE     )

1. My name is **KELLY PHILLIPS**: I am over eighteen years of age; I reside in the United States and I have personal knowledge of the matters set forth herein. I am mentally competent to sign this Affidavit and do so freely, voluntarily and pursuant to my own free will.

2. I am a Plaintiff, along with my husband, Edel Leon, in United States District Court, Southern District of Florida, Case No. 13-20854-CIV- Scola/Simonton.

3. I began working for the Defendants Mitchell's Lawn Maintenance Corporation in March of 2003 as assistant to the secretary of Defendant Mitchell Igelko.

4. On or about September of 2005, I was assigned the position of secretary to Mitchell Igelko as well as his Comptroller.

5. I remained in this capacity for on or about September 2005 through August 3, 2009, my last date of employment.

6. In this capacity, I came to know Mr. Lance Cooper as the owner of Best Vest Corp., a vendor doing business with Mitchell's Lawn Maintenance Corporation.

7. Sometime, in August of 2009, Defendant Igelko contacted an employee of Mr. Cooper regarding an employment opportunity as a mechanic. In turn, Mr. Cooper, via his manager, Mr. Ahmed Andrade contacted Plaintiff Leon regarding potential employment with Best Vest. Corp.

8. Subsequently, a meeting was set between Mr. Cooper and Plaintiff Leon in which I attended for purposes of assisting him with the use of the English language.

9. Mr. Cooper tendered an offer of employment to Plaintiff Leon including a gradated rate of pay, vacation days, sick days and insurance benefits to increase during the course of his continued employment.

10. At the time of this meeting Mr. Cooper inquired about the availability of my services for potential future employment, including a request for my resume and a tour of his business facilities. Mr. Cooper directly inquired as to whether I would be "comfortable" working for his company. I was mentioned as a specific replacement for his mother-in-law and would be able to not "befriend" any of his current employees.

11. During the course of this meeting, and thereafter, Mr. Andrade and Mr. Cooper both advised me and Plaintiff Leon that Defendant Igelko was representing to them that I had stolen one million dollars from Mitchell's Lawn Maintenance Corporation.

12. Nonetheless, Plaintiff Leon was subsequently hired by Mr. Cooper, but his compensation and benefits were never increased by Mr. Cooper as promised.

13. Plaintiff Leon and I inquired as to the progress of his increased compensation package on several occasions. On each occasion Mr. Cooper advised us that Defendant Igelko had been in contact with him and repeatedly accused us of stealing from him and other derogatory remarks.

14. I was not hired by Mr. Cooper. I was subsequently advised that he was unable to hire new personnel at that time, but he did, in fact, hire someone other than me for the job.

15. It is my belief that this was due Defendant Igelko's repeated communications with Mr. Cooper accusing both Plaintiff Leon and me of stealing from him.

16. During the course of my tenure of employment with Mitchell's Lawn Maintenance Corporation, I came to know Victor Cifuentes as a hydraulic sales vendor who did business with Mitchell's Lawn Maintenance Corporation.

17. Subsequently, Plaintiff Leon, during his ordinary course of business with Best Vest. Corp., presented at Mr. Cifuentes' place of business for the purposes of purchasing a hydraulic hose for Best Vest. Corp..

18. Mr. Cifuentes advised Plaintiff Leon that Defendant Igelko was representing to many people in the lawn care industry that we had stolen from him and were unemployable based on same.

19. I know Vichith Phanitdasack as the owner of Sushi Lico. I remain a semi-regular customer at this restaurant which I usually attend with Plaintiff Leon.

20. During a visit to Sushi Lico for a meal, I was advised by Mr. Phanitdasack that Defendant Igelko, to whom he referred to as the "crazy man", had previously been in the restaurant and accused me and Plaintiff Leon of stealing more than one million dollars from his company in front of staff members and other patrons.

21. I know Francisco Torres as the neighbor of Defendant Igelko, and the insurance agent for his personal vehicles and the vehicles owned and operated by Mitchell's Lawn Maintenance Corporation. I dealt with him in my regular course of employment with same.

22. After my date of termination with Mitchell's Lawn Maintenance Corporation, Mr. Torres contacted me regarding a separate suit he had pending against Defendant Igelko to ask for my assistance with that case.

23. Although I declined, Mr. Torres advised on a later date that he had video/audio surveillance of Defendant Igelko representing to him that I stole one million dollars and that this accusation was repeated thereafter in multiple conversations.

24. I thereafter learned that Mr. Torres had a restraining order against Defendant Igelko.

25. I know Alma Del Rio as a girlfriend of Mr. Igelko. Defendant Igelko requested that I personally communicate with her on several occasions on his behalf. On one such occasion Ms. Del Rio advised me that that she obtained a restraining order against him and that I should not be contacting her.

26. I also know that Dr. Robert DerHagopian is a neighbor of Defendant Igelko, and that they communicated with one another on a frequent basis.

27. I was advised by Mr. Torres that Ms. Del Rio presented to Dr. DerHagopian's office, at the request of Defendant Igelko, and for the purposes of continuing his attack on my character which he could not accomplish otherwise due to the restraining order.

28. According to Mr. Torres, the intent of Defendant Igelko was to have Dr. DerHagopian relay the character attacks upon me, by Ms. Del Rio, to Mr. Torres to influence him that I would not be a credible witness.

29. I know Barbara Igelko as the former spouse of Mitchell Igelko. During my course of employment with Mitchell's Lawn Maintenance Corporation, Ms. Igelko would contact me on issues regarding health insurance, child and alimony payments and other "family" issues involving Defendant Igelko.

30. After I was terminated by Mitchell's Lawn Maintenance Corporation, I had a communication with Ms. Igelko who advised that Defendant Igelko has accused me of stealing his money from him.

31. It is my belief that Defendant Igelko made this accusation against us in order to frustrate his obligation to pay child support, alimony and any other financial obligations due and owed to Ms. Igelko. Specifically, his unfounded and slanderous accusations that he could not meet his financial obligations to Ms. Igelko were due to the fact that I and Plaintiff Leon had stolen over one million dollars from Mitchell's Lawn Maintenance Corporation.

32. I know Edel Alfonso as the president of "Alfonso Lawn Service" and a former customer of Mitchell's Lawn Maintenance Corporation.

33. On August 22, 2012 Defendant Igelko met Mr. Alfonso at a car show. Mr. Alfonso subsequently advised me that Defendant Igelko advised him that both I and Plaintiff Leon and I stole 1.5 million dollars from him.

34. As such Mr. Igelko wrongfully accused me and Mr. Leon of stealing various sums of money between 1 million and 1.5 million dollars which has caused and continues to cause serious harm to our reputations within the business community and amongst friends.

35. I know Noel Baez to be an "on-off" lawn crew employee for Mitchell's Lawn Maintenance Corporation.

36. On one occasion, I know that Mr. Baez contacted Plaintiff Leon regarding the potential repair of certain equipment. It was during the course of this conversation that I came to learn that Defendant Igelko told Mr. Baez that I stole one million dollars from him.

37. Based on Plaintiff Leon's continued relations with our former co-workers we have come to learn that Defendant Igelko has continued to represent to his employees that we are thieves, will "rot in jail", and were otherwise held out as an example of anyone who would contemplate stealing from him notwithstanding the false nature of these statements.

38. I would describe the lawn care and maintenance industry in South Florida as "Tight Knit". Both vertical and lateral employment movement is reputation driven. I have not worked in the industry since 2009, notwithstanding my prior experience in the industry. I attribute this to be a direct result of the slanderous statements made by Defendant Igelko which have caused me emotional distress as well as financial hardship.

39. The Plaintiff Leon has also experienced a loss of income as well as other benefits commonly provided in the industry. This is also attributed to the slanderous statements made by Defendant Igelko causing him emotional distress as well as financial hardship.

40. In addition, and in support of the contentions raised herein, at the time of the pretrial conference, in the underlying Federal case (United States Federal Court for the Southern District of Florida, under case number 1:10-cv-20854), the attorney for Defendant Igelko asserted that I and other potential "key" witnesses would be soon be arrested and not be able to testify at trial on the federal matter.

41. The Defendants' attorney continued with this assertion prior to trial and at the time of trial notwithstanding the fact that an arrest warrant had not been and never was issued for her arrest or other "key" witnesses.

attorney clearly establishing that no arrest warrant had been issued as to either me or other "Key" witnesses.

43. The Defendant Igelco continued to make repeated inquiries to the State Attorney's office as to my alleged arrest date and received a similar response, neither I or any other "key" witnesses were subject to arrest.

44. Furthermore, during the course of jury deliberations, at the time trial in underlying Federal case, the Defendants, in the direction of Mitchell Igelko, slashed the tires of the vehicle belonging to Plaintiff Leon and myself, and another Plaintiff in this suit, Mr. Luis Solarzane, in order to retaliate against us for our testimony in this matter.

45. This was verified by the statement of the parking lot attendant when presented with a photo of Defendant Igelco.

46. Neither, I nor the Plaintiff Leon have stolen any monies, a computer or any other property from Defendant Igelco or Mitchell's Lawn Maintenance Corporation.

47. I Kelly Phillips have personal knowledge to all all paragraphs raised herein.

48. Plaintiff Leon has personal knowledge as to paragraphs 7, 8, 9, 11, 12, 13, 15, 17, 18, 19, 20, 30, 33, 34, 36, 37, 38, 39 40 and 46

DATED this 24th day of October, 2013.

_____
AFFIANT
Kelly Phillips

_____
AFFIANT
Edel Leon

The foregoing instrument was sworn to and subscribed before me, on this 24th day of October 2013, by Kelly Phillips and Fidel Leon, who have produced Florida Drivers License as identification.

_____
NOTARY PUBLIC, State of Florida