## AFFIDAVIT OF KELLY PHILLIPS

STATE OF FLORIDA            )
                            )  S.S.:
COUNTY OF MIAMI-DADE        )

1. My name is KELLY PHILLIPS: I am over eighteen years of age; I reside in the United States, and I have personal knowledge of the matters set forth herein.

2. I am a Plaintiff is the lawsuit styled as *Kelly Phillips and Edel Leon v. Mitchell's Lawn Maintenance Corporation, Mitchell's Lawn LLC, and Mitchell Igelko*, Case No.: 13-20854-CIV-SIMONTON, pending in the United States District Court for the Southern District of Florida.

3. On or about July 17, 2012, Mitchell Igelko, by and through his agents, slashed one of the tires of my car while I was in Court and my vehicle was parked in the car lot across from the Federal Court House. To the best of my knowledge, it was the American Car Parks parking lot.

4. On or about said date, me and Luis Solozano both had one tire of our respective cars slashed when we arrived back at the parking lot after Court, at approximately 5:00 p.m.

5. The car park attendant spoke in Spanish address all 5 of us, Edel Leon, Luis Solozano, Javier Gonzalez, Luisa Ginzberg, and me, saying it was the same individual who had slashed my attorney's tires the prior day. The car park attendant said that it was a good thing that he was there because he was going to slash the tires of my attorney's car again but he had arrived there to scare him away. The car park attendant said that he had received $5.00 from Mitchell Igelko to go away and buy a soft drink/soda so that he would not be in the parking lot. The car park attendant said that he was suspicious of Mitchell Igelko and I believe it is because of what had occurred the day prior.

6. The following day, when I returned to Court, my husband, Edel Leon, showed the same car park attendant a printed out picture of Mitchell Igelko and the car park attendant specifically confirmed that Mitchell Igelko had slashed the one tire of my vehicle.

7. The car park attendant spoke in Spanish to me and the other (4) people who were with me and my husband, Edel Leon, translated the conversation to me. I also observed the car park attendant nodding his head, saying yes in Spanish, and pointing at the picture of Mitchell Igelko.

8. My husband changed the slashed tire on my car and we left the lot with Luisa Ginzberg. Luis Solozano stayed behind because he had to call his brother to come help him and was waiting for him to come and to bring him a spare tire to replace the slashed tire on his car. I believe that Javier Gonzalez, who was travelling in Luis Solozano's car, and Luisa Ginsberg, who was travelling in my car, were present, heard the entire conversation, and can confirm the above.

9. I attended a post-trial hearing on or about February 2013 and my husband, Javier Gonzalez, and I parked our car in the same parking lot by the Federal Courthouse. The same car attendant above-mentioned approached us and I believe that he said he remembered us and Luis Solazano's car, a red Mustang, and he said he would watch out for our car. At that time, my husband asked if we could have his information so that my attorney could contact him about this matter and he said he was afraid for his job. The attendant 100% recalled the tire slashing from the previous year, in 2012.

10. Moreover, Vichith Phanitdasack owns a sushi restaurant and both myself and Mitchell Igelko are customers of.

11. Vichith Phanitdasack is a person known to me.

12. Sometime during the years 2011 through 2013, in a conversation that Mitchell Igelko had with Vichith Phanitdasack concerning me, Mitchell Igelko told Vichith Phanitdasack that I had stolen over 1 million dollars, a computer, the employee files, and the time cards from Defendants. Mitchell Igelko also told Vichith Phanitdasack not to hire me and that I was not employable and was a thief. Vichith Phanitdasack told me that Mitchell Igelko had told him that he wanted to ruin me and make my life miserable. I specifically recall that in the year 2013, when my husband and I were having dinner at Sushi Lico, Vichith Phanitdasack came over to our table and addressed me by name asking how I was doing. Vichith Phanitdasack said "you know, the crazy man was here yesterday, Mitchell, again talking bad about you." There was another employee there, who I believe is named Roberto, and he confirmed what Mitchell Igelko had said to Vichith Phanitdasack the day before.

13. Vichith Phanitdasack told me about his conversation with Mitchell Igelko and the specifics of that conversation, as above mentioned.

14. Victor Cifuentes is a person known to me. While working for Defendants I would go to the store, Hydraulics Sales Solution, owned by Victor Cifuentes to pick up parts. There was a mechanic that worked for Mitchell Igelko, Gabrielle Blanco, and he went to Victor Cifuentes' store after he was no longer employed by Mitchell Igelko and portrayed that he was still employed by Mitchell Igelko, purchased parts, and charged them to Mitchell's Lawn Maintenance Corporation. When Mitchell Igelko received the invoices he sent me and my co-worker Yahlin Chirino to view the surveillance video to confirm if it was Gabrielle in Victor Cifuentes' store. We confirmed that it was Gabrielle and that he had arrived in one of Mitchell Igelko's truck.

15. On or about October 2012, in a conversation that Mitchell Igelko had with Victor Cifuentes concerning me, Mitchell Igelko told Victor Cifuentes that I had stolen over 1 million dollars, a computer, the employee files, and the time cards from Defendants. Mitchell Igelko also told Victor Cifuentes not to hire me and that I was going to be arrested and that the police were ordered to pick me up.

16. When I went to Victor Cifuentes' store, Victor Cifuentes told me about his conversation with Mitchell Igelko and the specifics of that conversation, as above mentioned.

17. By these false words, Mitchell Igelko said to Vichith Phanitdasack and Victor Cifuentes, Defendants intended to say and publish that I was a thief and a criminal, not to be trusted, and unable or unwilling to perform my trade or profession as should reasonably be expected of me. The statements in the publication were false and tended to degrade and injure me in my good name, credit, and reputation and exposed me to distrust, hatred and contempt.

18. As a result, I was injured in my good name, credit, and reputation and brought into public scandal and disgrace, has been shunned by many persons with whom I previously had social or business relations, I have suffered mental anguish, and have been injured in my business by having lost trade and experienced difficulty in obtaining credit and employment.

_____
AFFIANT KELLY PHILLIPS

The foregoing instrument was sworn to and subscribed before me, on this 28 day of January, 2015, by _Kelly Phillips_, who has produced _FDL_ as identification.

_____
NOTARY PUBLIC, State of Florida

Aleida Menir
COMMISSION # FF174224
EXPIRES: November 5, 2018
WWW.AARONNOTARY.COM