UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.1:13-cv-20854-SCOLA/SIMONTON

KELLY PHILLIPS and EDEL LEON,   )
                                )
    Plaintiffs,                 )
v.                              )
                                )
MITCHELL'S LAWN MAINTENANCE     )
CORPORATION, MITCHELL'S LAWN    )
LLC, and MITCHELL IGELKO,       )
                                )
    Defendants.                 )
_____)

**DEFENDANTS' STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DE 124]**

Defendants MITCHELL'S LAWN MAINTENANCE CORPORATION (**"Defendant Mitchell's Lawn"**), MITCHELL'S LAWN LLC (**"Defendant Mitchell's LLC"**), and MITCHELL IGELKO (**"Defendant Igelko"**) (collectively, **"Defendants"**), pursuant to Local Rule 56.1, hereby files Defendants' Statement of Material Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment [DE 124] (**"Plaintiffs' Motion"**), and in support thereof state:

**I.
STATEMENTS IN OPPOSITION**

1.  Whether Defendant Igelko suspected someone was forging checks is irrelevant because it was Ms. Anita Aviles, the comptroller after Plaintiff Kelly Phillips ("**Plaintiff Phillips**") left Defendants' employment, who initially discovered these thefts and was deposed about it in the related federal court case *Melgar, et al. v. M.I. Quality Lawn* Maintenance*, Inc., et al.*, No. 09-22243 (the "*Melgar* **Case**"). (A true copy of the deposition transcript of Ms. Aviles

dated July 29, 2010, is attached to Defendants' Response in Opposition to Plaintiffs Motion for Partial Summary Judgment [129] ("**Defendants' Response**") as Exhibit "A" [DE 130-1].)

2.  Plaintiffs' statement regarding the firing of Plaintiff Edel Leon ("**Plaintiff Leon**") is not material to the argument presented in Plaintiffs' Motion, and, therefore, is not addressed in Defendants' Response.

3.  Plaintiffs' statement regarding the method of pay to workers is not material to Defendants' Response, and, therefore, no response is necessary.

    a. Plaintiffs' statement regarding the cashing of checks is not addressed in Defendants' Response because it is not material to the argument, and, therefore, a response is not necessary.

4.  Ms. Aviles testified that Plaintiff Leon would sign Defendant Igelko's signature. (Aviles Dep. [DE 130-1], 22:8–19.)

5.  Defendants have offered evidence that Ms. Phillips stole Defendants' money. Ms. Aviles testified that checks were issued to Plaintiffs that were indorsed by Plaintiffs but not authorized by Defendant Igelko. (Aviles Dep. [DE 130-1], 15:2–7, July 29, 2010.) Ms. Aviles further testified that the checks made out to Plaintiffs amounted to $232,000.00. (Aviles Dep. [DE 130-1], 16:2–7.) Ms. Aviles testified that Plaintiff Leon would sign Defendant Igelko's signature. (Aviles Dep. [DE 130-1], 22:8–19.) Ms. Elsa Gelman, Defendant Igelko's mother and the corporate representative for Defendant Mitchell's Lawn and Defendant Mitchell's LLC, testified on numerous occasions that Plaintiff Leon forged checks. (A true copy of the deposition transcripts of Ms. Gelman taken on July 14, 2010, and May 22, 2014, are attached to Defendants' Response as Exhibits "B" [DE 130-2] and "C" [DE 130-3], respectively.) In the *Melgar* Case, Ms. Gelman testified that Plaintiff Leon was "forging Mitchell's signature."

(Gelman Dep. [DE 130-2], 10:20–11:2, July 14, 2010.) Ms. Gelman also testified that she saw Plaintiff Phillips call Plaintiff Leon into the office to sign Defendant Igelko's signature on checks without Defendant Igelko's authority. (Gelman Dep. [DE 130-2], 11:22–12:8.)

6. Plaintiff Phillips was the "only one that [would] take care of accounts receivable in the computer." (Gelman Dep. [DE 130-3], 78:21–24.)

7. Although video surveillance cameras existed on the premises, those cameras were not recording. (*See* Aviles Dep. [DE 130-1], 34:17–23; Gelman Dep. [DE 130-2], 25:17–27:2.) It was not until December of 2009 that the video surveillance system was fixed and started to record, which was well after Plaintiffs' employment with Defendants ended. (*See* Aviles Dep. [DE 130-1], 35:5–10.)

8. Although denied, Plaintiffs' statement regarding "attempts to under-pay vendors" is not material to Defendants' Response, and therefore, a response is not necessary.

9. Plaintiff Phillips was working for Defendants, Plaintiff Phillips was the "only one that [would] take care of accounts receivable in the computer." (Gelman Dep. [DE 130-3], 78:21–24.)

    a. Ms. Phillips also was the only person who could see everything in QuickBooks. (Aviles Dep. [DE 130-1], 79:4–13.) Plaintiff Phillips was also the only one handling the checks. (Gelman Dep. [DE 130-3], 78:10–12.)

    b. No response.

    c. No Response.

    d. Ms. Phillips also was the only person who could see everything in QuickBooks. (Aviles Dep. [DE 130-3], 79:4–13.)

10. Defendants deny the claims made by Plaintiffs and, furthermore, Plaintiffs' gratuitous statement regarding the removal of money from paychecks is not material to the relief sought in Plaintiffs' Motion, therefore, is not addressed in Defendants' Response.

    a. Defendants deny the statement in 10(a), however, such statement is not material to the relief sought by Plaintiffs Motion, and, therefore, it is not addressed in Defendants' Response.

11. Although video surveillance cameras existed on the premises, those cameras were not recording (*See* Aviles Dep. [130-1], 34:17–23; Gelman Dep. [130-2], 25:17–27:2.) In fact, it was not until December of 2009 that the video surveillance system was fixed and started to record, which was well after Plaintiffs' employment with Defendants ended. (*See* Aviles Dep. [130-1], 35:5–10.)

    a. Security cameras were not recording. (*See* Aviles Dep. [130-1], 34:17–23; Gelman Dep. [130-2], 25:17–27:2.)

    b. Security cameras were not recording. (*See* Aviles Dep. [130-1], 34:17–23; Gelman Dep. [130-2], 25:17–27:2.)

    c. Security cameras were not recording. (*See* Aviles Dep. [130-1], 34:17–23; Gelman Dep. [130-2], 25:17–27:2.)

12. Although Defendants deny this statement, this statement is not material to the arguments presented in Plaintiffs' Motion, and, therefore, no response is necessary.

    a. Although Defendants deny this statement, this statement is not material to the arguments presented in Plaintiffs' Motion or Defendants' Response, and, therefore, no response is necessary.

– 5 –

    b. Although Defendants deny this statement, this statement is not material to the arguments presented in Plaintiffs' Motion or Defendants' Response, and, therefore, no response is necessary.

13. Plaintiff Phillips was the only one handling the checks. (Gelman Dep. [DE 130-3], 78:10–12.)

14. Plaintiff Phillips was the "only one that [would] take care of accounts receivable in the computer." (Gelman Dep. [DE 130-3], 78:21–24.) Plaintiff Phillips also was the only person who could see everything in QuickBooks. (Aviles Dep. [DE 130-1], 79:4–13.) In addition, this statement is not material to Defendants' Response because Defendants are also accusing Plaintiffs of forging checks amounting to $232,000 and that was not addressed in Plaintiffs' Motion.

15. Admitted.

16. Admitted, however, the time period that Sophia Bailey became aware of Plaintiffs and Defendants is irrelevant to the $232,000 in forged checks, and, thus, it is not addressed in Defendants' Response.

17. Sophia Bailey's testimony speaks for itself and therefore no response is necessary. Nonetheless, the determination that there is no probable cause does not relate to the forging of the $232,000 which is not addressed in Plaintiffs' Motion.

18. Sophia Bailey did not testify that there was "no evidence of Plaintiffs' Receiving funds that Defendants' claim were stolen by Plaintiffs" as alleged by Plaintiffs. Sophia Bailey testified that based on the forensic accountant's report she "was not able to determine that Kelly Phillips or Edel Leon received funds" that she "could trace" and "prove and have a good faith basis." (Bailey Depo [DE 126-6], 17:13–18, Feb. 26, 2015). However, Defendants did not

address this discrepancy in Defendants' Response because Sophia Bailey's testimony and investigation is irrelevant to Defendants' substantial truth defense.

19.     Sophia Bailey's testimony speaks for itself and therefore no response is needed. Nonetheless, the determination that there is no probable cause does not relate to the forged checks which is not addressed in Plaintiffs' Motion.

20.     Sophia Bailey's testimony speaks for itself and therefore no response is needed. Nonetheless, the determination that there is no probable cause does not relate to the forged checks which is not addressed in Plaintiffs' Motion.

21.     This statement is not addressed in Defendants' Response because it is not material thereto, and, therefore, no response is necessary.

## II.
## ADDITIONAL STATEMENTS

22.     Ms. Aviles testified that she knows Plaintiff Leon's signature because before she became comptroller, she did accounts payable, and Plaintiff Leon would give her daily receipts. (Aviles Dep. [130-1], 16:10–20.)

23.     She also knew Plaintiff Leon's signature because when she was an accounts payable personnel and not a comptroller, Plaintiff Leon was regularly brought into the office by Plaintiff Phillips, who was the comptroller at the time, to sign Defendant Igelko's signature to authorize certain activities over the phone while Defendant Igelko was not there. (Aviles Dep. [DE 130-1], 16:17–17:4.)

24.     Importantly, the Forged Checks <u>were not related to anything that occurred at Power Financial</u>, which is the basis of Plaintiffs' Motion concerning Defendants' substantial truth defense. (*See* Aviles Dep. [130-1], 20:16–18.)

25. In the Florida State Court Case, Ms. Gelman testified that she knew Plaintiff Leon forged the checks to steal money because she recognized Plaintiff Leon's forged signature of Defendant Igelko on the Forged Checks and then confirmed with a representative of Intercontinental Bank that Plaintiff Leon cashed the Forged Checks as they were all written to "cash." (Gelman Dep. [DE 130-3], 95:7–96:14, May 22, 2014.)

26. When Ms. Gelman was asked how she knew Plaintiff Leon received the funds, Ms. Gelman testified that Lydia Cabrera from Intercontinental Bank told her that Plaintiff Leon would "go and cash the checks." (Gelman Dep. [DE 130-3], 95:18–96:16.)

27. Ms. Gelman testified that Defendant Igelko did not authorize the checks. (Gelman Dep [DE 130-3], 97:3–4; 98:3–5.)

        Respectfully submitted,

By: /s/Rafael Viego III
Daniel A. Espinosa, Esq.
Florida Bar No. 81686
Rafael Viego III, Esq.
Florida Bar No. 60967
**ESPINOSA | JOMARRON**
*Counsel for Defendants*
4300 Biscayne Boulevard, Suite 305
Miami, Florida 33137
Telephone:   (305) 717-7530
Facsimile:   (305) 717-7539
E-mail: despinosa@ejtrial.com
E-mail: rviego@ejtrial.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served via e-mail this 6th day of June, 2015, upon: Jamie H. Zidell, Esq., 300 71st Street, Suite 605, Miami Beach, Florida 33141, zabogado@aol.com, Rivkah Jaff, Esq., rivkah.jaff@gmail.com, and Elizabeth O. Hueber, Esq., Elizabeth.hueber.esq.@gmail.com.

             By: /s/ Rafael Viego III
                Rafael Viego III, Esq.
                Florida Bar No. 60967