UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-20854-CIV- SIMONTON

[CONSENT CASE]

KELLY PHILLIPS and EDEL LEON,         )
                                      )
         Plaintiffs,                  )
    vs.                               )
                                      )
MITCHELL'S LAWN MAINTENANCE           )
CORPORATION,                          )
MITCHELL'S LAWN LCC,                  )
MITCHELL IGELKO,                      )
                                      )
         Defendants.                  )
_____

**JOINT PRETRIAL STIPULATION**

Pursuant to Fed.R.Civ.P.26(a)(3), S.D. Fla. L.R. 16.1(e), and the Court's Order [DE15], the Parties, by and through their respective undersigned counsel, hereby submit this joint pretrial stipulation. The Parties state the following:

1. **Joint Neutral Summary of the Claims and Defenses**

**For Plaintiffs:**

Plaintiffs demand a trial by jury. In the subject lawsuit, Plaintiffs Kelly Phillips ("Phillips") and Edel Leon ("Leon") bring several causes of action against Defendants, Mitchell's Lawn Maintenance Corporation ("Mitchell's Lawn Corp."), Mitchell's Lawn, LLC ("Mitchell's LLC") collectively, the "Corporate Defendants"), and Mitchell Igelko ("Igelko"), under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 215(a)(3), Fla. Stat. § 448.110(5), and Slander under the Court's Supplemental Jurisdiction, 28 U.S.C. 1367.

Both Plaintiffs were employees of Defendants and joined an action for unpaid overtime and minimum wages under the FLSA 29 U.S.C. § 201-219 in the United States Federal Court for the Southern District of Florida for unpaid overtime wages under the FLSA (Case No.: 10-CIV-20698). Thereafter, in direct violation of 29 U.S.C. 215 (A)(3), Plaintiffs experienced a myriad of adverse/retaliatory acts against them by Defendants, including, Defendants accusing Plaintiffs of stealing approximately two (2) million dollars from Defendants, adding claims against Plaintiffs in a pending lawsuit in the Circuit Court for the 11th Judicial Circuit of Florida (Case No.: 09-69166), seeking Plaintiffs' arrests based on false accusations, threatening Plaintiffs with arrest, and other adverse actions. The motivating factor for Defendants retaliating against Plaintiffs was due to Plaintiffs' demands for legally mandated wages under the FLSA. Evidenced by the temporal proximity between Plaintiffs demands for claims for mandated wages under the FLSA and the fact that Defendants had no basis for their allegations, it is clear that their actions were to retaliate against Plaintiffs for their protected activity and, as a result, Plaintiffs have been damaged.

Moreover, the individual Defendant Igelko, on behalf of himself and as an agent for the Corporate Defendants, has slandered Plaintiffs to Francisco Torres, Alma del Rio, Edel Alfonso, Noel Baez, and several others, injuring Plaintiffs good names, credits, reputations, and brought them into public scandal and disgrace by many persons with whom Plaintiffs previously had social or business relations. Defendants' slanderous conduct was malicious, retaliatory, and intended to degrade and injure Plaintiffs' in their good name, credit, reputation, and expose Plaintiffs to distrust, hatred, and contempt, and, as a result, Plaintiffs have been damaged.

**For Defendants:**

On November 24, 2014, Plaintiffs filed a twenty (20) count Amended Complaint [DE 88] (the **"Amended Complaint"**) against Defendants sounding in retaliation and slander. Among the claims made by Plaintiffs in the Complaint were that Defendants retaliated against them due to Plaintiff Phillips amending her FLSA complaint in a 2010 lawsuit by: (a) adding new claims against Plaintiff Phillips in Defendant Mitchell's Lawn's already pending, 2009 state court lawsuit; and (b) stating in open court by and through Defendants' attorney that Plaintiff Phillips was about to be arrested and a warrant was issued against her. Additionally, Plaintiffs claim that Defendant Igelko slashed the tires of Plaintiffs during a previous trial brought by Plaintiffs against Defendant Igelko and, thus, Defendant Igelko retaliated against Plaintiffs. Other than Plaintiffs' self-serving testimony, there is no evidence to support any of the claims being brought by Plaintiffs.

First, Plaintiffs cannot prove counts I-III because even if the alleged conduct occurred, Plaintiffs suffered no adverse employment action. Plaintiffs cannot prove a prima facie case for retaliation under Counts I-III.It bears mentioning that at the time all of the alleged conduct occurred, neither Plaintiff was employed by Defendants. Plaintiff Leon began working for the Defendants in approximately February 1997 and was employed by Defendants until August 19, 2009, and Plaintiff Phillips worked for the Defendants from March 2003 through August 3, 2009.Second, as for the remaining counts, assuming, *arguendo*, that Plaintiffs prove Defendant(s) slandered them, Plaintiffs suffered no damages. Similarly, with respect to Counts I – III, even assuming *arguendo* that Defendants did commit an adverse employment action against Plaintiffs, Plaintiffs have not suffered damages as a result. Plaintiffs have no evidentiary

support for their claim that their credit was damaged as a result of Defendant Igelko's statements. In fact, their own deposition testimony refutes their claims.

Plaintiffs claim they lost employment, credit, reputation, trade, and a slew of other things. The deposition testimony of Plaintiffs refutes these very allegations. Plaintiff Phillips testifies that she does not know why she did not find employment and that she never applied to work for Mr. Torres or Mr. Alfonso. Moreover, Plaintiffs' reputation was not harmed as the witnesses to corroborate their claims are still friends with Plaintiffs and believe Plaintiffs did not steal money and that what Mr. Igelko said was not true.

In addition to the foregoing, there are additional affirmative defenses Defendants intend to prove at trial. Plaintiffs' claims pertaining to counts XVIII and XIX are barred by the statute of limitations because the male co-plaintiffs in the *Melgar* case stopped working for Defendants more than two (2) years before the Complaint was filed on March13, 2013, and Defendant Igelko had not spoken to any of the male co-plaintiffs in the Melgar case after they stopped working. More importantly, Defendants contend that Plaintiffs, indeed, stole money from Defendant Igelko and Mitchell's Lawn Corp. Truth is an absolute defense, and Defendants will show the jury that, more likely than not, Leon and Phillips were involved in a conspiracy resulting in the embezzlement of over one million dollars from Defendants.

2. **The Basis of Federal Jurisdiction**

Federal jurisdiction is based on the presence of a Federal question under 28 U.S.C. § 1331. Specifically, Plaintiffs bring their claims under the Fair Labor Standards Act 29 U.S.C § 215(a)(3), Fla. Stat. § 448.110(5), and Slander under the Court's Supplemental Jurisdiction, 28 U.S.C. 1367. No evidence regarding FLSA coverage/subject-matter jurisdiction and/or interstate commerce or Defendants' gross annual income for the relevant time period will need be

introduced at trial for jurisdiction purposes, but will be introduced for other relevant issues in this case (i.e. punitive damages).[1] Plaintiffs' claim for retaliation is brought under the FLSA, 29 U.S.C. 215(a)(3), which states it shall be unlawful for any person to "discharge **or in any other manner discriminate** against any employee because such employee has filed any complaints or instituted or caused to be instituted any proceeding under or related to this chapter…or has testified or is about to testify in any such proceeding…" 29 U.S.C. § 215(a)(3) (emphasis added).

3. **Pleadings Raising The Issues.**

A. Plaintiffs' First Amended Complaint dated November 24, 2014. [DE88].

B. Defendants' Amended Answer and Affirmative Defenses dated March 24, 2015. [DE111].

4. **A List Of All Undisposed Motions Or Other Matters Requiring Action By The Court.**

A. Plaintiffs' Motion to Strike Affirmative Defenses (3/26/15). [DE113].

B. Plaintiffs' Omnibus Motion in *Limine,* to be filed herewith.

C. All Motions in *Limine* to be filed by Defendants prior to the pre-trial conference.

D. Defendants' Motion for Sanctions pursuant to the Court's Inherent Authority.

5. **Concise Statement of Undisputed Facts Which Will Not Require Proof At Trial.**

A. This is an action arising under the Fair Labor Standards Act 29 U.S.C § 215(a)(3), Fla. Stat. § 448.110(5), and Slander under the Court's Supplemental Jurisdiction, 28 U.S.C. 1367.

B. Plaintiffs' Initial Complaint against Defendants, Mitchell's Lawn Maintenance Corp., and Mitchell Igelko, was filed on March 11, 2013 and was served on Defendants on March 18, 2013. [DE1 and 8].

C. Plaintiffs filed their First Amended Complaint against Defendants, Mitchell's Lawn Maintenance Corp., and Mitchell Igelko, and added Mitchell's Lawn, LLC, as a

---

[1] Defendants' annual income/sales, financial information, or otherwise, will be presented at trial for other matters (i.e. punitive damages, motive for slander, impeachment, etc.).

successor company and party-Defendant and a claim for punitive damages, on November 24, 2014. [DE88].

D. No evidence regarding FLSA coverage/subject-matter jurisdiction and/or interstate commerce or Defendants' gross annual income for the relevant time period will need be introduced at trial for jurisdiction purposes, but may be introduced for other relevant issues in this case (i.e. punitive damages).[2]

E. Plaintiffs' claim for retaliation is brought under the FLSA, 29 U.S.C. 215(a)(3), which states it shall be unlawful for any person to "discharge **or in any other manner discriminate** against any employee because such employee has filed any complaints or instituted or caused to be instituted any proceeding under or related to this chapter…or has testified or is about to testify in any such proceeding…" 29 U.S.C. § 215(a)(3).

F. Mitchell Igelko authorized Plaintiff Leon to sign and endorse checks on his behalf and on behalf of Mitchell's Lawn Corp., while Plaintiffs were employed by Defendants.

G. The Defendant Mitchell's Lawn Corp. was Plaintiffs' FLSA employer for Plaintiffs' respective period of employment ("the relevant time period") and Mitchell's Lawn Corp., regularly transacts business within Miami-Dade County.

H. Mitchell's Lawn, LLC, has a similar business model and is managed with the similar business purpose at the exact same location as Mitchell's Lawn Corp. was managed.

I. On or about November 17, 2010, Plaintiff Phillips filed her amended complaint for unpaid minimum and overtime wages under the FLSA 29 U.S.C. § 201-219 in the United States Federal Court for the Southern District of Florida (Case No.: 10-20698).

J. On or about November 18, 2010, in the Circuit Court for the 11th Judicial Circuit of Florida (Case No.: 09-69166), Defendant Mitchell's Lawn Corp. filed a Notice of Hearing, setting forth its motion for leave to file an amended complaint to add additional claims against Plaintiffs.

K. On or about November 30, 2010, in the Circuit Court for the 11th Judicial Circuit of Florida (Case No.: 09-69166), Defendant Mitchell's Lawn Corp.'s motion to amend was granted by the Court adding Plaintiffs as defendants alleging Plaintiffs stole over one million dollars from Defendants.

L. Defendants contend that Plaintiff was a key witness "comptroller" in the case *Melgar et al. v. Mitchell's Lawn Maintenance Service Corp., et al.*, Case No.: 09-22243, on behalf of approximately 20 former workers, as well as Case Nos.: 10-20506, 10-20698, and 10-20975.

---

[2] Defendants' annual income/sales, financial information, or otherwise, will be presented at trial for other matters (i.e. punitive damages, motive for slander, impeachment, etc.).

M.     Defendants were sued by other employees for overtime/minimum wages and/or retaliation.

N.     Plaintiff were "employees" of Mitchell's Lawn Corp., and Mitchell Igelko under the FLSA during the relevant time period.

O.     On or about September 21, 2014, the state court action (Case No.: 09-69166) was dismissed with prejudice after several years of litigation and later reinstated, and remains pending.

### 6. Issues Of Fact Which Remain To Be Litigated At Trial.

**For Plaintiffs:**

A.     Whether Plaintiffs suffered subsequent adverse action or otherwise retaliated against by Defendants (employers) because they engaged in protected activity pursuant to the facts alleged in the First Amended Complaint. [DE88].

B.     Whether there is a causal connection between Plaintiffs' activities and the adverse actions.

C.     Whether Defendants in a conversation that Defendant Igelko had with Francisco Torres concerning Plaintiffs in which Defendants told Francisco Torres that Plaintiffs had stolen over one (1) million dollars, a computer, the employees' files, and the time cards from Defendants, on or about March 2012.

D.     Whether Defendants in a conversation that Defendant Igelko had with Alma del Rio concerning Plaintiffs in which Defendants told Alma del Rio that Plaintiffs had stolen over one (1) million dollars from Defendants and wipes his office clear, sometime during the years 2011 through 2013.

E.     Whether Defendants in a conversation that Defendant Igelko had with Edel Alfonso concerning Plaintiffs in which Defendant told Edel Alfonso that Plaintiffs are crooks and criminals, that they had stolen 1.5 million dollars from Defendants, and that they were going to rot in jail.

F.     Whether Defendants in a conversation that Defendant Igelko had with Edel Alfonso concerning Plaintiffs in which Defendant told Edel Alfonso that Plaintiffs are crooks and criminals, that Plaintiff Phillips stole the computer, the employee records, the employee files, and that she took everything, on or about the week of August 22, 2012.

G.     Whether Defendants in a conversation that Defendant Igelko had with several then current employees concerning Plaintiffs in which Defendant told several then current employees that Plaintiffs are crooks and criminals, that they had stolen 1.5 million dollars from Defendants, and that they were going to rot in jail, on or about August 2012.

H. Whether Defendants in a conversation that Defendant Igelko had with several then current employees concerning Plaintiffs in which Defendant told several then current employees that Plaintiffs had stolen a computer, the employees' records, the employees files, and that she took everything, on or about August 2012.

I. Whether Defendants in a conversation that Defendant Igelko had with Noel Baez concerning Plaintiffs in which Defendant told Noel Baez that Plaintiffs had stolen over one (1) million dollars, were going to rot in jail, and that the police have a warrant out for their arrests, on or about May 2012.

J. Whether Defendants in a conversation that Defendant Igelko had with several former employees that were involved in an overtime/retaliation lawsuit against Defendants concerning Plaintiff Leon, in which Defendant told several former employees that Plaintiffs are crooks, criminals, and scumbags, that they were going to steal money from a Federal lawsuit where Plaintiffs were co-plaintiffs and that these former employees should not talk to Plaintiffs or else their former employees would be arrested when the police come to escort Plaintiffs to jail, sometime during the years 2011 through 2013.

K. Whether Defendants in a conversation that Defendant Igelko had with each of the male co-plaintiffs (except Plaintiff Leon) in the Federal opt-in suit, styled *Ruben Rodriguez Melgar v. Mitchell's Lawn Maintenance Corp,* Case No.: 09-22243-CIV-Simonton, in which Defendant told said male co-plaintiffs that Plaintiffs were going to steal co-plaintiffs' money when the case was settled and that he had already settled with the opposing attorneys and that Plaintiffs stole their money, sometimes during the year 2012 through 2013.

L. Whether Defendants, by and through the filing of the State Court Action (Case No.: 09-69166) publicized that Plaintiffs converted funds from Defendants' business accounts by signing and/or endorsing Defendants' business checks without authorization to do so and also related this in conjunction with false information as stated in the Complaint.

M. The amount of damages due to Plaintiffs for attorney's fees, costs, interest, emotional distress, mental anguish, injunctive relief, and humiliation and pain and suffering, as well as all other damages recoverable by law 29 U.S.C. 216(B) and 215(a)(3).

N. No evidence regarding FLSA coverage/subject-matter jurisdiction and/or interstate commerce or Defendants' gross annual income for the relevant time period will need be introduced at trial for jurisdiction purposes, but may be introduced for other relevant issues in this case (i.e. punitive damages).[3]

O. Plaintiffs were engaged in protected activity under the FLSA and Fla. Stat. § 448.110(5) when Plaintiffs joined an action for unpaid overtime and minimum wages under the

---

[3] Defendants' annual income/sales, financial information, or otherwise, will be presented at trial for other matters (i.e. punitive damages, motive for slander, impeachment, etc.).

|   |   |
|---|---|
|    | FLSA 29 U.S.C. § 201-219 in the United States Federal Court for the Southern District of Florida for unpaid overtime wages under the FLSA (Case No.: 10-CIV-20698). |
| P. | The individual Defendant Igelko is the President, Secretary, Treasurer, and owner of the Corporate Defendants who ran the day-to-day operations of the Corporate Defendants for the relevant time period and was responsible for paying Plaintiffs' wages for the relevant time period and controlled Plaintiffs' work and schedule and was, therefore, Plaintiffs' employer as defined by 29 U.S.C. § 203(d). |
| Q. | The individual Defendant Igelko was acting on behalf of himself and the Corporate Defendants at all times material hereto. |
| R. | Mitchell Igelko authorized both Plaintiffs to sign and endorse checks on his behalf and on behalf of the Corporate Defendants while Plaintiffs were employed by Defendants. |
| S. | The Defendant Corporations, Mitchell's Lawn Maintenance, Corporation, and Mitchell's Lawn, LLC, were Plaintiffs' joint FLSA employers for Plaintiffs' respective period of employment ("the relevant time period") and regularly transacts business within Dade County. |
| T. | Defendant Mitchell's Lawn, LLC, is a successor entity in relation to the other joint employers, Mitchell's Lawn Maintenance, Corporation, and Mitchell Igelko. |
| U. | Defendants have intentionally and improperly taken efforts to avoid paying the Final Judgment (*Leon et al. v. M.I. Quality Lawn Maintenance, Inc., et al.*, Case No.: 10-20506-CIV-Seitz/Simonton) and/or judgments to come in that action or this action by dissolving Defendant Mitchell's Lawn Maintenance Corporation and non-party M.I. Quality Lawn Maintenance, Inc., and transferring the business and assets (financial and otherwise) to a newly formed company called Mitchell's Lawn, LLC. |
| V. | Mitchell's Lawn, LLC, is a successor entity in relation to the other joint employers, Mitchell's Lawn Maintenance Corporation and Mitchell Igelko, that assumed the liabilities relevant to the claim subject to this lawsuit and/or it is conducting business with the similar employees and similar business models and managed with the similar business purpose at the exact same location as Mitchell's Lawn Maintenance Corporation and is controlled by Mitchell Igelko. |
| W. | Mitchell's Lawn, LLC, is doing business as a "mere continuation" of its predecessors Mitchell's Lawn Maintenance Corporation and Mitchell Igelko and is, therefore, a successor entity which is liable for the acts and liabilities of Mitchell's Lawn Maintenance Corporation and Mitchell Igelko. |
| X. | Mitchell's Lawn, LLC was created with the sole fraudulent and bad faith intention of avoiding payment of the Final Judgments and/or Judgments to come (*Leon et al. v. M.I. Quality Lawn Maintenance, Inc., et al.*, Case No.: 10-20506-CIV-Seitz/Simonton) or judgments to come in this action. |

Y.  On or about November 18, 2010, in the Circuit Court for the 11th Judicial Circuit of Florida (Case No.: 09-69166), Defendant Mitchell's Lawn Maintenance Corporation filed a Notice of Hearing, setting forth its motion for leave to file an amended complaint to add the claims against Plaintiffs.

Z.  On or about November 30, 2010, in the Circuit Court for the 11th Judicial Circuit of Florida (Case No.: 09-69166), Defendant Mitchell's Lawn Maintenance Corporation's motion to amend was granted adding Plaintiffs as defendants alleging Plaintiffs stole approximately two (2) million dollars from Defendants.

AA. Prior to the trial in consolidated Case Nos.: 10-20506, 10-20698, and 10-20975, filed in the United Stated District Court, Defendants attorneys, who acted as agents on behalf of Defendants, repeatedly stated that Plaintiff Phillips was about to be arrested and would probably not be able to testify at trial. Said statements were commenced to Plaintiffs' Counsel and/or the State Attorneys' Office on or about the week of May 27, 2012, prior to the pre-trial conference in consolidated Case Nos.: 10-20506, 10-20698, and 10-20975, and continued through the dates of the trial (7/5/12-7/17/12) and even after trial.

BB. Defense Counsel called and/or emailed the Miami-Dade State Attorneys' Office before and after the trail of Case Nos.: 10-20506, 10-20698, and 10-20975, inquiring and regularly urging the State Attorney to arrest or cause to be arrested Plaintiff Phillips. This continued the pretrial conference, trial, and thereafter when Defendants, through their attorneys and corporate representative, stated that arrest warrants were issued against Plaintiff and a key witness, Hary De La Cruz.

CC. The Magistrate Judge presiding over Case Nos.: 10-20506, 10-20698, and 10-20975 called the Assistant State Attorney handling the alleged arrests, the Assistant State Attorney stated that no arrest warrant had been issued for either Plaintiff Phillips or Hary De La Cruz.

DD. While the jury was deliberating in Case Nos.: 10-20506, 10-20698, and 10-20975, Defendants, by and through Igelko, slashed the tires of the vehicles of Plaintiffs and other plaintiffs in order to intimidate and to otherwise punish Plaintiffs for having brought and/or participated in overtime/minimum wage claims brought against Defendants.

EE. Defendants were sued by other employees for overtime/minimum wages and/or retaliation.

FF. Defendants employed numerous undocumented workers from 2006 through to 2009 and paid them weekly by cash.

GG. Plaintiffs were "employees" of Defendants (the Corporate and Individual Defendants) under the FLSA during the relevant time period.

HH. Liquidated damages (i.e. doubling) and attorneys' fees/costs will only be considered by the Court, if Plaintiff prevails at trial, and shall not be discussed nor mentioned in front of the jury as the jury need not consider same.

**For Defendants:**

A. Whether Defendant Igelko had a conversation with Victor Cifuentes whereby Defendant told Mr. Cifuentes that Plaintiffs stole money from Defendants.

B. Whether Defendant Igelko had a conversation with Vichith Phanitdasack whereby Defendant told Mr. Phanitdasack that Plaintiffs stole money from Defendants.

C. Whether Defendant Igelko had a conversation with any other person named in the Amended Complaint and told them that Plaintiffs stole money from Defendants.

D. Whether Plaintiffs did in fact steal money from Defendants.

E. Whether Plaintiffs stole employee files and time records from Defendants.

F. Whether Plaintiff Phillips was denied employment because of Defendant Igelko's allegedly slanderous statements.

G. Whether Plaintiff Leon can claim any damages since he was able to secure employment shortly after being terminated by Defendants.

G. Whether Plaintiffs forged Defendant Igelko's signature without authorization.

H. Whether Plaintiffs suffered any damage to their credit, reputation, and lost trade or employment as a result of the alleged statements made by Defendant Igelko.

J. Whether Defendant Igelko is a joint employer under the economic reality test, which he is not, and thus cannot be held personally liable.

K. Whether Plaintiffs were involved in any fraudulent activities concerning the business of Defendant Mitchell's Lawn Corp.

L. Whether Plaintiffs suffered any adverse employment action as a result of Defendants' alleged conduct.

M. Whether there is a causal link between Plaintiffs' alleged participation in a statutorily protected activity and the adverse employment action.

N. Whether Defendant Igelko terminated Plaintiff Leon in good-faith for non-retaliatory reasons.

O. Whether Plaintiffs and Hary De La Cruz were involved in a conspiracy to embezzle money from Defendant Igelko and Defendant Mitchell's Lawn Corp.

P. Whether Plaintiffs have asserted a prima facie case for retaliation.

Q. Whether Kelly Phillips was fired or whether she quit her employment.

R. Whether Plaintiffs failed to state a cause of action against Defendants Mitchell's Lawn Corp. and Mitchell's LLC in that the quoted defamatory statements allegedly made by Defendant Igelko were neither made on behalf of Defendants Mitchell's Lawn and Mitchell's LLC, nor in any capacity as an officer, director, manager, or owner of said corporate Defendants; thus, no liability can be imputed on Defendants Mitchell's Lawn Corp. and Mitchell's LLC. Whether Plaintiffs suffered any damages as a result of the alleged defamatory statements made by Defendant Igelko or any other Defendant.

S. Vichith Phanitdasack testified during his deposition that neither Igelko nor anyone on his behalf ever told Mr. Phanitdasack that Plaintiffs stole any money from Defendants.

T. Vichith Phanitdasack testified that neither Plaintiff ever applied for a job at his restaurant. To date, Vichith Phanitdasack welcomes Plaintiffs at his restaurant.

U. Victor Cifuentes testified that neither Igelko nor anyone on his behalf ever told Mr. Cifuentes that Plaintiffs stole any money from Defendants.

V. Mr. Cifuentes testified that neither Plaintiff ever applied for a job at his business.

W. Edel Alfonso testified that he doesn't believe that Plaintiffs stole any money from Defendants and that he likes Plaintiffs and his opinion of Plaintiffs has not changed despite hearing what Igelko allegedly told him.

X. Kelly Phillips and Edel Leon became lovers and eventually husband and wife while working at Mitchell's Lawn Corp.

Y. Kelly Phillips was ordered by a State Court Judge to turn over any and all documents belonging to Mitchell's Lawn Corp., and Kelly Phillips never turned any documents over.

Z. In or about August 2009, Kelly Phillips was confronted by a private detective at Defendant Mitchell's Lawn Corp.'s office. Within minutes of being questioned by the investigator, Kelly Phillips packed two bags and left Defendant Mitchell's Lawn Corp.'s place of business—Kelly Phillips never returned to work at Defendant Mitchell's Lawn Corp. thereafter.

AA. Checks coming into Mitchell's Lawn Corp. were being deposited into an account under Mitcel's Lawn (one "L") at Power Financial Credit Union when Hary De La Cruz no longer worked at Defendant Mitchell's Lawn Corp.

BB. Kelly Phillips was the comptroller of Defendant Mitchell's Lawn Corp., and Edel Leon was the head mechanic of Mitchell's Lawn Corp.

CC. Kelly Phillips and Edel Leon previously sued Defendant Mitchell's Law Corp. and Defendant Igelko for failure to pay overtime, and a jury determined they were not entitled to overtime pay.

DD. Plaintiff will need to prove that Mithcell's LLC meets the jurisdictional threshold.

### 7. A Concise Statement Of Issues Of Law On Which There Is Agreement.

A. This is an action arising under the Fair Labor Standards Act 29 U.S.C § 215(a)(3), Fla. Stat. § 448.110(5), and Slander under the Court's Supplemental Jurisdiction, 28 U.S.C. 1367.

B. 29 U.S.C. 215(a)(3) states:

> "it shall be unlawful for any person…to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

C. In the Eleventh Circuit, retaliation claims under the FLSA are analyzed under the burden-shifting framework employed by courts in cases brought under Title VII of the Civil Rights Act. *See e.g., Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1342–43 (11th Cir.2000). The three elements for retaliation pursuant to 29 U.S.C. 215(a)(3) and *Wolf v. Coca-Cola Co.,* 200 F.3d 1337 (11th Cir. 2000) are: (1) that plaintiff engaged in activity protected under the Act; (2) that plaintiff subsequently suffered adverse action by the employer; (3) the presence of causal connection between the plaintiff's activity and the adverse action. *See also Reich v. Davis,* 50 F.3d 962 (11th Cir. 1995) (the leading 11th Circuit case which discusses the standards for retaliation pursuant to 29 U.S.C. 215 (A)(3)).

D. The Eleventh Circuit has stated, "an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire, or constructive discharge in order to qualify as an adverse employment action." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

E. Defamation is generally defined as the unprivileged publication of false statements which naturally and proximately result in injury to another. *Wolfson v. Kirk,* 273 So. 2d 774 (Fla. 4th DCA 1973).

F.  To establish a cause of action for defamation, a plaintiff must show: (1) That the defendant published a false statement about the plaintiff; (2) To a third party; and (3) That the falsity of the statement caused injury to the plaintiff. *See Razner v. Wellington Regional Med. Ctr., Inc.,* 837 So. 2d 437 (Fla. 4th DCA 2002); *Bass v. Rivera,* 826 So.2d 534, 535 (Fla. 2d DCA 2002). Only those statements that are false rise to the level of defamation. *Id.*

G.  In a slander per se action, "punitive damages may be awarded even though the amount of actual damages is neither found nor shown, for in such a case, the requirement of a showing of actual damages as a basis of an award for exemplary damages is satisfied by the presumption of injury which arises from a showing of libel or slander that is actionable per se." *Saunders Hardware Five and Ten, Inc. v. Low,* 307 So. 2d 893 (Fla. 3d DCA 1974).

H.  The Florida Litigation Privilege bars causes of action or damages which arise from activity occurring in or related to judicial process. The Florida Litigation Privilege applies to Florida causes of action, but does not bar or otherwise hinder federal causes of action, such as those of retaliation brought under the FLSA.

I.  Punitive damages are warranted as punishment to [one or more] defendant as a deterrent to others. Punitive damages are in addition to compensatory damages awarded.

J.  Punitive damages are warranted against a defendant if a jury finds by clear and convincing evidence that a defendant was guilty of intentional misconduct or gross negligence, which was a substantial cause of [loss], [injury], [or] [damage] to a plaintiff. Under those circumstances, a jury may, in their discretion, award punitive damages against a defendant. If clear and convincing evidence does not show such conduct by a defendant, punitive damages are not warranted against them.

K.  "Intentional Misconduct" means that a defendant had actual knowledge of the wrongfulness of the conduct and that there was a high probability that injury or damage to a plaintiff and, despite that knowledge, [he/she] intentionally pursued that course of conduct, resulting in injury or damage.

L.  "Gross Negligence" means that a defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

M.  "Clear and Convincing Evidence" differs from "greater weight of the evidence" in that it is more compelling and persuasive.

N. "Compensatory Damages" are damages recovered in payment for actual injury or economic loss, which does not include punitive damages.

O. Mitchell's Lawn Corp., was Plaintiffs' FLSA employer for Plaintiffs' respective period of employment ("the relevant time period") and regularly transacted business within Miami-Dade.

P. Mitchell's Lawn, LLC, is conducting business with similar business models and managed with the similar business purpose at the exact same location as Mitchell's Lawn Corp.

Q. Liquidated damages (i.e. doubling) and attorneys' fees/costs will only be considered by the Court, if Plaintiff prevails at trial, and shall not be discussed nor mentioned in front of the jury as the jury need not consider same.

R. Venue is proper in the Southern District of Florida.

**8. A Concise Statement Of Issues Of Law Which Remain For Determination By The Court.**

**For Plaintiff:**

A. Whether Plaintiffs were retaliated against by Defendants pursuant to the allegations in the First Amended Complaint [DE88] or otherwise retaliated against under 29 U.S.C. 215(a)(3).

B. Whether Plaintiffs were slandered by Defendants pursuant to the allegations in the First Amended Complaint [DE88].

C. The amount of damages due to Plaintiffs pursuant to the allegations in the First Amended Complaint [DE88].

D. Issues concerning the above facts to be litigated at Trial, if such matters are named during the directed verdict phase of the Trial.

E. Defendants' Affirmative Defenses based on the doctrine of unclean hands, set-off [DE111, Twelfth Affirmative Defense],and [DE111, Eighteenth through to and including Thirtieth Affirmative Defenses], as said Defenses are invalid and objected to by Plaintiffs.

F. Whether Plaintiffs are entitled to punitive damages and in what amount.

G. [The] causal link between the protected activity and the adverse action may be suggested by the fact that the alleged retaliation **closely follows the protected activity**. *Strickland v. MICA Info. Sys*, 800 F. Supp. 1320 (M.D.N.C. 1992); *Larsen v. Club Corp. of America, Inc.*, 855 F. Supp. 247 (N.D. Ill. 1994).

H. As to the first prong, a *prima facie* case, under *Wolf,* has been met by Plaintiffs. Plaintiffs engaged in activity protected under the Act by joining an action for unpaid overtime and minimum wages under the FLSA 29 U.S.C. § 201-219 in the United States Federal Court for the Southern District of Florida for unpaid overtime wages under the FLSA (Case No.: 10-CIV-20698) and asserting their mandated rights for overtime under the FLSA.

I. As to the third prong, a *prima facie* case, under *Wolf,* has been met by Plaintiffs. Plaintiffs have demonstrated the presence of a causal connection between Plaintiffs' activities and the adverse action.

J. There are four categories of statements that constitute slander per se and need not show damages: 1. Imputing to another a criminal offense amounting to a felony; 2. Imputing to another a presently existing venereal disease or other loathsome and communicable disease; 3. Imputing to another, the other being a woman, acts of unchastity; 4. Imputing to another conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office. *See Wolfson,* 273 So. 2d at 777 (internal citations omitted).

K. No evidence regarding FLSA coverage/subject-matter jurisdiction and/or interstate commerce or Defendants' gross annual income for the relevant time period will need be introduced at trial for jurisdiction purposes, but may be introduced for other relevant issues in this case (i.e. punitive damages, motive for slander, impeachment, etc.).[4]

L. The individual Defendant Igelko is the President, Secretary, Treasurer, and owner of the Corporate Defendants who ran the day-to-day operations of the Corporate Defendants for the relevant time period and was responsible for paying Plaintiffs' wages for the relevant time period and controlled Plaintiffs' work and schedule and was, therefore, Plaintiffs' employer as defined by 29 U.S.C. § 203(d).

M. The individual Defendant Igelko was acting on behalf of himself and the Corporate Defendants at all times material hereto.

N. The Defendant Corporations, Mitchell's Lawn Maintenance, Corporation, and Mitchell's Lawn, LLC, were Plaintiffs' joint FLSA employers for Plaintiffs' respective period of employment ("the relevant time period") and regularly transacts business within Dade County.

O. Defendant Mitchell's Lawn, LLC, is a successor entity in relation to the other joint employers, Mitchell's Lawn Maintenance, Corporation, and Mitchell Igelko.

---

[4] Defendants' annual income/sales, financial information, or otherwise, will be presented at trial for other matters (i.e. punitive damages, motive for slander, impeachment, etc.).

P.  Defendants have intentionally and improperly taken efforts to avoid paying the Final Judgment (*Leon et al. v. M.I. Quality Lawn Maintenance, Inc., et al.*, Case No.: 10-20506-CIV-Seitz/Simonton) and/or judgments to come in that action or this action by dissolving Defendant Mitchell's Lawn Maintenance Corporation and non-party M.I. Quality Lawn Maintenance, Inc., and transferring the business and assets (financial and otherwise) to a newly formed company called Mitchell's Lawn, LLC.

Q.  Mitchell's Lawn, LLC, is a successor entity in relation to the other joint employers, Mitchell's Lawn Maintenance Corporation and Mitchell Igelko, that assumed the liabilities relevant to the claim subject to this lawsuit and/or it is conducting business with the similar employees and similar business models and managed with the similar business purpose at the exact same location as Mitchell's Lawn Maintenance Corporation and is controlled by Mitchell Igelko.

R.  Mitchell's Lawn, LLC, is doing business as a "mere continuation" of its predecessors Mitchell's Lawn Maintenance Corporation and Mitchell Igelko and is, therefore, a successor entity which is liable for the acts and liabilities of Mitchell's Lawn Maintenance Corporation and Mitchell Igelko.

S.  Mitchell's Lawn, LLC was created with the sole fraudulent and bad faith intention of avoiding payment of the Final Judgments and/or Judgments to come (*Leon et al. v. M.I. Quality Lawn Maintenance, Inc., et al.*, Case No.: 10-20506-CIV-Seitz/Simonton) or judgments to come in this action.

T.  On or about November 17, 2010, Plaintiff Phillips filed her amended complaint for unpaid minimum and overtime wages under the FLSA 29 U.S.C. § 201-219 in the United States Federal Court for the Southern District of Florida (Case No.: 10-20698).

U.  On or about November 18, 2010, in the Circuit Court for the 11th Judicial Circuit of Florida (Case No.: 09-69166), Defendant Mitchell's Lawn Maintenance Corporation filed a Notice of Hearing, setting forth its motion for leave to file an amended complaint to add the claims against Plaintiffs.

V.  On or about November 30, 2010, in the Circuit Court for the 11th Judicial Circuit of Florida (Case No.: 09-69166), Defendant Mitchell's Lawn Maintenance Corporation's motion to amend was granted adding Plaintiffs as defendants alleging Plaintiffs stole approximately two (2) million dollars from Defendants.

W.  Prior to the trial in consolidated Case Nos.: 10-20506, 10-20698, and 10-20975, filed in the United Stated District Court, Defendants attorneys, who acted as agents on behalf of Defendants, repeatedly stated that Plaintiff Phillips was about to be arrested and would probably not be able to testify at trial. Said statements were commenced to Plaintiffs' Counsel and/or the State Attorneys' Office on or about the week of May 27, 2012, prior to the pre-trial conference in consolidated Case Nos.: 10-20506, 10-20698, and 10-20975, and continued through the dates of the trial (7/5/12-7/17/12) and even after trial.

X.  A jury previously found that Defendants Mitchell's Lawn Maintenance Corporation and Mitchell Igelko retaliated against Plaintiff Leon by terminating Plaintiff Leon's employment with Defendants upon the filing of Plaintiff Leon's overtime complaint under the FLSA in Case No.: 10-20506.

Y.  Plaintiff were "employees" of Defendants (the Corporate and Individual Defendants) under the FLSA during the relevant time period.

Z.  Fees and costs post-trial should Plaintiffs prevail.

AA. Admissibility of Defendants exhibits listed on Defendants' Exhibit List (should said List be filed by Defendants, as none has been filed as of yet). Plaintiffs reserve all rights to object to any and all exhibits listed by Defendants should they file an Exhibit List and assert objections as to any and all exhibits listed by Defendants. Plaintiffs have not been provided with an Exhibit List and have not had an opportunity to review said exhibit list and make a determination as to their objections to same and, therefore, object to any and all exhibits listed by Defendants in their Exhibit List.

**For Defendants:**

A.  Whether unclean hands is a bar to recovery on a claim for retaliation.

B.  Whether unclean hands is a bar to recovery on a claim for slander.

C.  The scope of the Florida Litigation Privilege.

D.  The scope of First Amendment protection to Defendants as applied to the alleged statements made by Defendants.

E.  Whether Plaintiffs suffered any type of adverse employment action to support their claims for retaliation.

F.  Whether Defendants are joint employers in any respect.

G.  Whether Defendant Igelko qualifies as a joint employer under the economic reality test.

**9.     Trial Exhibit Lists.**

A.  Plaintiff's Trial Exhibit List filed as [DE161].

B.  Defendants' Trial Exhibit List to be filed.[5]

---

[5] Plaintiffs reserve all rights to object to any and all exhibits listed by Defendants should they file an Exhibit List and assert objections as to any and all exhibits listed by Defendants. Plaintiffs have not been provided with an Exhibit List and have not had an opportunity to review said

### 10. Trial Witness Lists.

A. Plaintiff's Trial Witness List was filed pursuant to the Court's Order.

B. Defendants' Trial Witness List was filed pursuant to the Court's Order.

### 11. Estimated Trial Time.

The parties estimate that the trial will be approximately a 5 day jury trial.

### 12. Estimate Of Attorneys' Fees.

Plaintiff will file the appropriate motion should Plaintiff prevail at trial. Plaintiff's attorney's fees are estimated at $155,000.00 through trial and post-trial motions.

Defendants attorney's fees are estimated at $245,000.00 through trial and post-trial motions.

### 13. Damages Plaintiffs' Are Claiming.

Pursuant to the Court's directive at the Summary Judgment Hearing for this case, the Plaintiffs advise the Court that they will not seek lost economic damages at the trial of this case. Plaintiffs will seek non-economic damages such as mental anguish, suffering, damage to reputation/name (past, present, and future) and punitive damages and all other non-economic damages as allowed by law. In the event Plaintiffs prevail, they will seek all available injunctive relief from this Court as allowed by 29 USC 216(B) and all injunctive relief allowed under applicable State law post trial.

Plaintiffs will likewise seek attorney's fees and costs associated with this case, post-trial, should they prevail at trial.

Dated this 20th day of October, 2015.

| | |
|---|---|
| J.H. ZIDELL, P.A. | ESPINOSA LAW GROUP |
| Attorneys for Plaintiffs | 10625 N. Kendall Drive |
| 300 71st Street, Suite 605 | Miami, Florida 33176-1510 |
| Miami Beach, Florida 33141 | Tel: 305-655-1501 |
| Tel. (305) 865-6766 | |
| Fax. (305) 865-7167 | |
| | |
| By: /s/Rivkah Jaff | By: /s/Daniel Alberto Espinosa |
| Rivkah Jaff, Esquire | Daniel Alberto Espinosa, Esquire |
| Florida Bar No.: 107511 | Florida Bar No.: 81686 |

---

exhibit list and make a determination as to their objections to same and, therefore, object to any and all exhibits listed by Defendants in their Exhibit List.

| | |
|---|---|
| Rivkah.Jaff@gmail.com | Despinosa@EspinosaLawGroup.com |
| ATTORNEYS FOR PLAINTIFFS | ATTORNEYS FOR DEFENDANTS |