# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO.1:13-cv-20854-SCOLA/SIMONTON

KELLY PHILLIPS and EDEL LEON,     )
     )
     Plaintiffs,     )
     )
v.     )
     )
MITCHELL'S LAWN MAINTENANCE     )
CORPORATION, MITCHELL'S LAWN     )
LLC, and MITCHELL IGELKO,     )
     )
     Defendants.     )
     )

## DEFENDANTS' AMENDED MOTION FOR SANCTIONS AGAINST PLAINTIFFS' LAWYERS AND THE LAW FIRM OF J.H. ZIDELL UNDER THE COURT'S INHERENT AUTHORITY, AND FOR SANCTIONS AGAINST PLAINTIFFS KELLY PHILLIPS AND EDEL LEON[1]

Defendants MITCHELL'S LAWN MAINTENANCE CORPORATION ("**Defendant Mitchell's Lawn**"), MITCHELL'S LAWN LLC ("**Defendant Mitchell's LLC**"), and MITCHELL IGELKO ("**Defendant Igelko**") (collectively "**Defendants**"), pursuant to the Court's inherent authority, move for sanctions against all of Plaintiffs' lawyers, including but not limited to Jamie H. Zidell, Esq., and his law firm, J.H. Zidell, P.A. ("**Zidell**" or "**Plaintiffs' Counsel**"[2]), and Plaintiffs KELLY PHILLIPS ("**Phillips**") and EDEL LEON ("**Leon**") (collectively, "**Plaintiffs**"), and state as follows:

---

[1]     The undersigned has filed all pertinent transcripts (in his possession) to enable the Court to make a fully informed decision.

[2]     The term Plaintiffs' Counsel includes all the lawyers who advocated the Complaint and Amended Complaint [D.E. 88] after it was signed, filed, and submitted by J.H. Zidell, Esq. (except for Daniel Feld, Esq.).

**ESPINOSA LAW GROUP**
TRIAL LAWYERS

## I.

## INTRODUCTION

On May 4, 2015, Defendants filed Defendants' Motion for Sanctions Against Plaintiffs' Lawyers and the Law Firm of J.H. Zidell under the Court's Inherent Authority [D.E. 122] (**"Defendants' Motion for Sanctions"**) requesting this Court to invoke its inherent authority and sanction Plaintiffs' lawyers for their bad faith conduct in bringing frivolous, false claims against Defendants—specifically, Counts IV–VI of Plaintiffs' Amended Complaint.[3] The arguments in Defendants' Motion for Sanctions stem from the deposition testimony of Victor Cifuentes and Vichith Phanitdasack, who testified in a manner that unequivocally revealed that the factual allegations in Counts IV–VI of Plaintiffs' Amended Complaint wholly lack any evidentiary support. Notwithstanding Defendants' Motion for Sanctions, Plaintiffs and their counsel refused to withdraw the allegations in Counts IV–VI of Plaintiffs' Amended Complaint and, therefore, Defendants were forced to expend judicial resources and move for summary judgment on those Counts.

On October 8, 2015, this Court heard oral argument on, among other motions, Defendant's Motion for Sanctions and Defendants' Motion for Summary Judgment [D.E. 123]. On November 17, 2015, this Court entered an Omnibus Order on Parties' Motions for Summary Judgment and Outstanding Pretrial Motions [D.E. 214] (the **"Order"**). The Order granted Defendant's Motion for Summary Judgment with respect to Counts IV–VI of Plaintiff's Amended Complaint "because there was no evidence in the record to support the slander claims alleged in Counts IV through VI." (Order, p. 15.) With respect to Defendant's Motion for Sanctions, the Order stated that the

---

[3]     A true and correct copy of Defendants' Motion for Sanctions and Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Sanctions is attached hereto as **"Composite Exhibit A**."

**ESPINOSA LAW GROUP**
TRIAL LAWYERS

"issue could be better addressed after trial and therefore took the Motion under advisement." (Order, p. 18.) Accordingly, now that the trial of this matter has concluded, and Defendants have prevailed on all twenty (20) counts of Plaintiffs' Amended Complaint, Defendants hereby amend their Motion for Sanctions and, again, request that this Court invoke its inherent authority. The conduct giving rise to this Amended Motion for Sanctions (the **"Amended Motion"**) took place during the trial of the instant case.

In addition to the allegations in Defendants' Motion for Sanctions, Defendants further request that this Court sanction Plaintiffs' Counsel and Plaintiffs for their actions leading up to and during trial for the reasons set forth with particularity below. First, Plaintiffs' Counsel falsely accused the undersigned of verbally threatening Plaintiffs at mediation. Notwithstanding that this alleged threat purportedly occurred in front of one of Plaintiffs' attorneys and the mediator, Plaintiffs' Counsel conveniently chose not to mention anything to this Court until trial—mediation took place in 2013. Additionally, it was revealed during the deposition of the parking lot attendant that Plaintiffs' Counsel intimidated the parking lot attendant and threatened him with having to testify in court to corroborate Plaintiffs' retaliation claims: that Defendant Igelko purportedly slashed the tires of Plaintiffs and Plaintiffs' Counsel during a previous trial between similar parties. Plaintiffs' Counsel deployed these antics prior to trial and continued to act in a deliberately improper manner during trial.

At trial, even after this Court granted summary judgment in favor of Defendant on Counts IV–VI of Plaintiff's Amended Complaint, Plaintiffs' Counsel improperly and surprisingly elicited testimony that Defendants had FBI agents threaten Messrs. Cifuentes and Phanitdasack prior to their depositions. This was the <u>first time</u> Plaintiffs' Counsel so much as insinuated these allegations, and <u>followed Plaintiffs' Counsel's assertions at the pre-trial conference and in previous</u>

motions that Messrs. Cifuentes and Phanitdasack simply "had a change of heart" and "did a complete 180" insofar as their testimony. Plaintiffs' Counsel had no evidence to support these allegations, and was instead trying to salvage Plaintiffs' sinking ship via these false claims. Such conduct by a fellow attorney is simply unbecoming of the profession and merits sanctions.[4]

Lastly, Defendants request that this Court invoke its inherent authority to sanction Plaintiffs and Plaintiffs' Counsel for their perjury and subversive litigation tactics, respectively, during the trial of this matter. On December 4, 2013, in a similar but separate case (Case No. 10-20506-CIV-SEITZ/SIMONTON), Defendant Mitchell's Lawn and Defendant Igelko filed a Motion for Relief from Final Judgment and for Sanctions (**"Defendants' Motion to Set Aside"**) against Plaintiffs, among others.[5] Defendants' Motion to Set Aside provided Plaintiffs and Plaintiffs' Counsel with documentary proof, via affidavit and bank statements, that Plaintiffs' claims against Defendant Igelko and his related companies were wholly fabricated because Leon found employment immediately after being terminated by Defendant Igelko. Notwithstanding the foregoing, Plaintiffs continuously perjured themselves during trial, and Plaintiffs' Counsel allowed Plaintiffs to perjure themselves, by stating that Leon could not find employment for three months after being terminated by Defendant Igelko. It bears mentioning this is after the undersigned not only showed Plaintiffs and their counsel the cancelled checks for August, September, October, and November, but also showed and furnished a true and correct copy of Plaintiffs' bank statements showing the checks being deposited into Plaintiffs' account. Plaintiffs' repeated perjury, and Plaintiffs'

---

[4]     Based on a reliable source, it has come to the undersigned's attention that Mr. Zidell often brags about the relationship he has with the Honorable Andrea M. Simonton and how it would be highly unlikely that he would ever get sanctioned due to the alleged relationship he has with the judge. This comment is in no way directed at the Court.  The undersigned has tried several cases before Judge Simonton and knows she is a fair, impartial, and extremely intelligent jurist.

[5]     A true and correct copy of Defendants' Motion to Set Aside is attached as **"Exhibit B."**

**ESPINOSA LAW GROUP**
TRIAL LAWYERS

Counsel's encouragement of said perjury, should not be tolerated by this Court and is worthy of sanctions.

Defendants' Motion to Set Aside related to Plaintiffs' perjury concerning Leon's employment, however, shortly before the trial of this matter Defendants discovered that Plaintiffs also perjured themselves before and during trial concerning Phillips' purported inability to find employment. For years, Plaintiffs testified that Phillips never found work after being terminated by Igelko, however, an affidavit filed by Phillips in 2013 clearly indicated that Phillips did in fact find employment after leaving Defendant Igelko's business, despite her false testimony to the contrary. Not surprisingly, Phillips' alibi is that she became the ultimate Good Samaritan and "volunteered" for nearly 3.5 years at the law office of George Nachwalter prior to his disbarment. This Court should further sanction Plaintiffs for their false testimony concerning Phillips' inability to find work after being terminated by Defendant Igelko.

**II.**
**ARGUMENT**
A.
STANDARD OF REVIEW:
SANCTIONS PURSUANT TO THIS COURT'S INHERENT AUTHORITY

Federal courts possess the inherent power to impose attorney's fees upon a losing party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 248–49 (1975). A federal judge's inherent power to award sanctions is derived from the Court's need "to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 42 (1991). "While the other sanction mechanisms only reach certain individuals or conduct, the inherent power extends to a full range of litigation abuses and must continue to exist to fill in the

– 5 –
**ESPINOSA LAW GROUP**
TRIAL LAWYERS

interstices." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Chambers*, 501 U.S. at 46) (internal quotation marks omitted).

"Indeed, the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct, for these rules are not substitutes for the inherent power." *Id.* (citing *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir.1995)) (internal quotation marks omitted). "[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the task [of imposing sanctions], the court may safely rely on its inherent power" to sanction bad faith conduct in the course of litigation. *Id.* (quoting *Chambers*, 501 U.S. at 50), *also citing Shepherd v. Am. Broadcasting Cos.*, 62 F.3d 1469 (D.C. Cir. 1995) (stating that "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap.") Therefore, "although certain conduct may or may not be violative of Rule 11 . . . it does not necessarily mean that a party will escape sanctions under the court's inherent power." *In re Mroz*, 65 F.3d at 1575 (citing *Chambers*, 501 U.S. at 49)).

The Eleventh Circuit has explained that "the key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation omitted). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citation omitted). In contrast to 28 U.S.C. § 1927, a district court may assess attorneys' fees and costs against the client or his attorney, or both, when either has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Bryne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) (quoting *Chambers*, 501 U.S. at 45–46)).

ESPINOSA LAW GROUP
TRIAL LAWYERS

In *Barnes v. Dalton*, plaintiffs filed a complaint, amended complaint, and second amended complaint, all sounding in race discrimination in employment and all strikingly similar. 158 F.3d 1212, 1213 (11th Cir. 1998). To refute certain of plaintiffs' allegations, defendant was forced to hire an expert to perform a statistical analysis of the racial composition of defendant's workforce and to provide testimony. The district court granted summary judgment for the defendant.

Following the entry of summary judgment for defendant, defendant moved for sanctions against plaintiffs' counsel (Mr. Frederick) pursuant to 28 U.S.C. § 1927 and the court's inherent authority. The basis for sanctions was the necessity of the expert's services and testimony and the cost for same, which defendant alleged was in excess of $70,000. The district court granted the motion because "Defendant incurred the fees and costs for Dr. Baker's declaration only because Plaintiffs, through Mr. Frederick, filed frivolous allegations of adverse impact and a pattern and practice of discrimination which were time-barred and/or had no basis in fact." *Id.* at 1214. Because the court found that the bad faith conduct which caused the defendant to incur those costs was attributable to Frederick alone, the court awarded the defendant $70,620.20 in sanctions against Frederick.

On appeal, the Eleventh Circuit held that the district court did not abuse its discretion in sanctioning Frederick. Although it was clear that Frederick frequently failed to follow the local and federal rules, the court focused its attention on the allegedly frivolous disparate impact and pattern and practice claims because Frederick's pursuit of those claims caused the defendant to incur the expenses to which the district court tied its award of sanctions. In affirming sanctions, the Court held:

> If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith. *See Mroz*, 65 F.3d at 1576. The district court's

– 7 –

explanation of its finding that Frederick had no basis in fact for repeatedly asserting the disparate impact and pattern and practice claims was as follows:

> [T]he court must conclude from Ms. Stewart's failure to adduce any evidence in opposition to Defendant's summary judgment motions that neither of Plaintiffs' counsel ever had such evidence. Because Mr. Frederick's response to the [motion for sanctions] contains no showing to the contrary, there is no weight to his argument that he cannot be liable because he filed the lawsuit in good faith upon information from his clients and withdrew prior to discovery. Frederick argues that such deductive reasoning is improper. If Frederick had not been given an independent opportunity to demonstrate that he had a reasonable basis in fact for asserting the claims in question, we might agree. However, Frederick was given such an opportunity but he failed to make any "showing to the contrary." Frederick has pointed to nothing in the record that was before the district court which convinces us that the court's conclusion was an abuse of discretion.

*Id.* at 1214-15.

### B.
### DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS' LAWYERS AND THE LAW FIRM OF J.H. ZIDELL UNDER THE COURT'S INHERENT AUTHORITY [DE 122] AND DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS FOR FAILURE TO DISCLOSE AND FOR FAILURE TO FURNISH A WITNESS LIST WITH MEMORANDUM OF LAW [DE 137][6] ARE FULLY INCORPORATED HEREIN BY REFERENCE

In an effort to preserve judicial resources and not reiterate the same arguments this Court has already considered, Defendants fully incorporate the entirety of Defendant's arguments from Defendants' Motion for Sanctions and Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Sanctions [D.E. 137], which are attached hereto as Composite Exhibit A. As expressly detailed in Defendants' Motion for Sanctions, the allegations in Counts IV–VI of Plaintiffs'

---

[6]      Plaintiffs' Response to Defendants' Motion for Sanctions inadvertently bore the same name as an earlier response to another of Defendants' motions submitted [D.E. 127], which is why the title of Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Sanctions [D.E. 137] bears no relationship to the title of Defendants' Motion for Sanctions.

Amended Complaint wholly lacked *any* evidentiary support. Messrs. Cifuentes and Phanitdasack did not simply recant or forget their purported interactions with Defendants and Plaintiffs that formed the basis of Plaintiffs' allegations, rather, both gentlemen testified that Igelko *never* said anything negative about Plaintiffs and, in the case of Mr. Cifuentes, testified that he did not even know who Kelly Phillips was. Plaintiffs' claims were not weak; they were fabricated. Accordingly, Defendants renew their request that this Court award sanctions against each of Plaintiffs' lawyers that advocated Counts IV–VI of Plaintiffs' Complaint and Plaintiffs' Amended Complaint including but not limited to Jamie H. Zidell, Esq., Rivkah Jaff, Esq., Elizabeth Hueber, Esq., David Kelly, Esq., and the law firm of J.H. Zidell, P.A.

<u>C.</u>
<u>PLAINTIFFS AGAIN PERJURED THEMSELVES DURING THE TRIAL OF THIS MATTER BY FALSELY TESTIFYING THAT LEON COULD NOT FIND WORK FOR THREE MONTHS AFTER BEING TERMINATED BY DEFENDANT IGELKO</u>

In an effort to preserve judicial resources and not reiterate the same arguments this Court has already considered, Defendants fully incorporate the entirety of Defendant's arguments from Defendant's Motion to Set Aside filed in Case No. 10-20506 (which was also tried before this Court), which is attached hereto as Exhibit B.

Specifically, Defendants direct this Court to those allegations in Defendants' Motion to Set Aside concerning Plaintiffs' perjured testimony that Leon was unable to work for three months after being terminated by Defendant Igelko. Plaintiffs have testified to this "fact" for several years, however, it is now undisputed that Plaintiffs' entire story was fabricated, and that Leon found gainful employment *immediately* after leaving Defendant Igelko's employment. Despite Plaintiffs being fully advised of their perjured testimony, Plaintiffs once again perjured themselves by testifying to the foregoing "facts" during the trial of this matter.

ESPINOSA LAW GROUP
TRIAL LAWYERS

Defendants' Motion to Set Aside attached as exhibits several documents maintained by the company that employed Leon directly after his termination by Defendant Igelko—Best Vest Corporation d/b/a Perrine Rentals (**"Perrine"**), which was owned by Lance Cooper. Among these documents were an affidavit signed by Mr. Cooper (the **"Cooper Affidavit"**), a copy of Leon's Employment Application with Perrine, and Perrine's bookkeeping records for every net payment received by Leon from September 2, 2009, through November 30, 2012 (**"Leon's Real Compensation List"**).[7]

In Paragraph 5 of the Cooper Affidavit, Mr. Cooper swore that Leon began working for Perrine the week of August 24, 2013—i.e., the week following Leon's termination date—which is not three (3) months later as Leon testified under oath numerous times. Mr. Cooper corroborated this exact testimony during the trial of this matter, and his sworn testimony directly contradict Leon's testimony in various depositions and trials over the last several years. In addition to the Cooper Affidavit and Mr. Cooper's testimony during trial, Leon's Employment Application further clearly states that Leon began working for Perrine on August 26, 2009. Lastly, Leon's Real Compensation List clearly indicates that Leon received his first payment from Mr. Cooper on September 2, 2009, and weekly thereafter for the three (3) months he swore he was not working and could not find work, which proves that Leon lied under oath several times.

Notwithstanding the foregoing, Leon could not let go of the lies.  During his deposition in this case, he testified as follows:

> Q When did you first work at Perrine?
> A I don't remember.
> Q But you remember being out of work for a

---

[7]     The Cooper Affidavit, Leon's Employment Application, and Leon's Real Compensation List are attached hereto as **Composite Exhibit "C."** The foregoing documents were previously filed in Case No. 10-20506.

**ESPINOSA LAW GROUP**
TRIAL LAWYERS

period of time after you no longer worked at
Mitchell's?
A Yes. Some three months afterwards is when
I began to work at Perrine.

(Plaintiffs' Dep. Tr., p. 2, lines 2-8)  At trial, Leon again stated he rightfully claimed monies

in the previous trial for the three months he did not work and, indeed, "he won the case."  When

asked if he was honest about not working those three months, Leon again perjured himself saying

he did not find work until three months after Mitchell fired him. Meanwhile, Attorneys Zidell and

Jaff watched and allowed their client to perjure himself over and over again. For the foregoing

reasons, Defendants request that this Court sanction Leon for his repeated perjury concerning his

employment history.

D.
PLAINTIFFS AGAIN PERJURED THEMSELVES DURING THE TRIAL OF THIS
MATTER BY FALSELY TESTIFYING THAT PHILLIPS COULD NOT FIND ANY
WORK AFTER BEING TERMINATED BY DEFENDANT IGELKO

Plaintiffs' perjury concerning Leon's employment situation was discussed extensively in

Defendants' Motion to Set Aside, however, it was not until recently that Defendants uncovered

even more evidence concerning *Phillips'* employment history following her termination by

Defendant Igelko. Plaintiffs have consistently testified for years that Phillips has not been

employed since being fired by Defendant Igelko, and it is that inability to find work that formed a

primary basis for Plaintiffs' Amended Complaint. However, just like Plaintiffs falsely testified that

Leon did not work for three (3) months after being terminated by Defendant Igelko, Plaintiffs' also

falsely testified about Phillips' purported employment woes. The foregoing lies are evidenced by

an affidavit filed by Phillips on March 27, 2013[8], in Hillsborough County, Florida, which

---

[8]      A true and correct copy of the Phillips Affidavit is attached hereto as **Exhibit "D."**

– 11 –
**ESPINOSA LAW GROUP**
TRIAL LAWYERS

conclusive establishes that Phillips found employment after being terminated by Defendant Igelko (the **"Phillips Affidavit"**).

In the Phillips Affidavit, Phillips swears to a series of events occurring *at her job* between November 2012 and February 2013—a time period during which she allegedly could not find work due to Defendant Igelko's purported slander. In the Affidavit, Phillips swears that she was "formerly employed by George M. Nachwalter as a Legal Assistant." (Phillips' Affidavit, ¶ 2.) Further, Phillips swears that while "[she] was employed in Mr. Nachwalter's office," she never took any actions without his direction. (*See* Phillips' Affidavit, ¶ 17.) Lastly, Phillips swears that she felt that her boss "wanted [her] to leave his employment . . . [and] [w]hen he saw [she] was not going to leave on [her] own, he fired [her] on February 1, 2013." (Phillips' Affidavit, ¶ 20.)[9]

For years Plaintiffs testified in trial and during depositions that Phillips did not work a single day since being fired by Defendant Igelko. Further, Plaintiffs' Counsel filed dozens of motions and pleadings to the same effect. This theme has formed the basis of Plaintiffs' multiple lawsuits against Defendants, and has resulted in Defendants incurring hundreds of thousands of dollars in legal fees to defend Plaintiffs' undoubtedly false claims. In the meantime, Phillips was swearing in a separate court, in a separate county, that she was gainfully employed in an attorneys' office while she simultaneously sued Defendants for being unable to find work. Plaintiffs' perjured statements and complete fabrications have made a mockery of our judicial system, and such two-faced lies are simply appalling. This Court must send a strong message to Plaintiffs that perjury is not tolerated, and this Court should further invoke its inherent authority to issue Plaintiffs the

---

[9]     It is no coincidence that Mr. George Nachwalter was disbarred because money went missing from his trust account, which Phillips had access to. And not surprisingly, Phillips testified against her former boss after he fired her. As the saying goes, history repeats itself.

harshest sanctions this Court deems appropriate, including but not limited to, reimbursement of

attorneys' fees and costs and referral for prosecution to the United States Attorneys' Office.

E.<br>
THIS COURT SHOULD AWARD SANCTIONS AGAINST JAMIE H. ZIDELL, ESQ., AND<br>
THE LAW FIRM OF J.H. ZIDELL, P.A. FOR OFFERING FALSE EVIDENCE TO THIS<br>
COURT AND FAILING TO DISCLOSE THE FALSITY OF PLAINTIFFS' TESTIMONY.

Rule 4-3.3 of the Rules of Professional Conduct, Candor Toward the Tribunal, provides in

pertinent part as follows:

> A lawyer shall not knowingly:
> . . . .
> (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; [or]
> . . . .
> (4) offer evidence that the lawyer knows to be false. A lawyer may not offer testimony that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
> **(b) Criminal or Fraudulent Conduct.** A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

The foregoing rules stem from a reading of the Florida Statutes, which state that perjury, and aiding

in committing perjury, are both felonies. Section 837.02(1), Florida Statutes, states in relevant part

that "whoever makes a false statement, which he or she does not believe to be true, under oath in

an official proceeding in regard to any material matter, commits a felony of the third degree . . . ."

Further, section 777.0111, Florida Statutes, states:

**ESPINOSA LAW GROUP**
TRIAL LAWYERS

> Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153, (1972) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). As the Florida Supreme Court stated:

> [C]ourts are almost wholly dependent on members of the bar to marshal and present the true facts of each cause in such manner as to enable the judge or jury to cook the adversary contentions in a crucible and draw off the material, decisive facts to which the law may be applied.
>
> When an attorney adds or allows false testimony to be cast into the crucible from which the truth is to be refined and taken to be weighed on the scales of justice, he makes impure the product and makes it impossible for the scales to balance.

*Dodd v. Florida Bar*, 118 So. 2d 17, 19 (Fla. 1960).

In the instant case, Plaintiffs' Counsel violated Rule 4-3.3 of the Rules of Professional Conduct by failing to disclose to this Court that Plaintiffs offered false testimony. Not only did Plaintiffs' Counsel breach his duty to prevent Plaintiffs from offering false testimony, but also Plaintiffs' Counsel further breached his duty to correct said testimony, albeit Plaintiffs' Counsel was keenly aware of its falsity. Plaintiffs' Counsel knew that Plaintiffs intended to engage in, and did engage in, criminal and fraudulent conduct related to this proceeding and intentionally failed to take *any* remedial measures to rectify same.

Since at least December 2013, Plaintiffs' Counsel has been aware that Plaintiffs lied when they testified that Leon was unable to find work for three (3) months after being terminated by

Defendant Igelko. Defendants have supplied Plaintiffs with affidavits, bank statements, correspondence, and the like evidencing Plaintiffs falsehoods, however, Plaintiffs' Counsel continues to trudge along and ignore Defendants' documentary evidence. At the trial of this matter, Plaintiffs' Counsel once again allowed Plaintiffs to testify falsely, once again failed to rectify the false testimony, and once again assisted his clients in perpetrating a fraud on this Court. As the Supreme Court eloquently stated, allowing an attorney to present *knowingly false evidence* is incompatible with rudimentary demands of justice. Accordingly, this Court should not tolerate Plaintiffs' Counsel's two year crusade of lies, and should invoke its inherent authority to sanction Plaintiffs' Counsel' for presenting false testimony before this Court and deliberately failing to correct same.

WHEREFORE, Defendants MITCHELL'S LAWN MAINTENANCE CORPORATION, MITCHELL'S LAWN LLC, and MITCHELL IGELKO, respectfully request that this Honorable Court:

a. award sanctions against each of Plaintiffs' lawyers that advocated Counts IV—VI of the Amended Complaint, including, but not limited to, Jamie H. Zidell, Esq., Rivkah Jaff, Esq., Elizabeth Hueber, Esq., David Kelly, Esq., and the law firm of J.H. Zidell, P.A.;

b. award sanctions against Jamie H. Zidell, Esq., and the law firm of J.H. Zidell, P.A. for eliciting false testimony during trial concerning the reasoning why Messrs. Cifuentes and Phanitdasack did not provide favorable testimony for Plaintiffs;

c. award sanctions against Plaintiffs for their continued perjury during trial concerning Leon's inability to find employment for three months after being terminated by Defendant Igelko;

d. award sanctions against Plaintiffs for their continued perjury during trial concerning Phillips' inability to find any employment after being terminated by Defendant Igelko;

ESPINOSA LAW GROUP
TRIAL LAWYERS

e.  award sanctions against Jamie H. Zidell, Esq., and the law firm of J.H. Zidell, P.A. for allowing Plaintiffs to repeatedly perjure themselves during trial and failing to correct Plaintiffs' false statements with the Court;

f.  refer Plaintiffs to the United States Attorneys' Office for criminal prosecution; and

g.  grant such further relief this Court deems just and proper.

Respectfully submitted,

**ESPINOSA LAW GROUP**
10625 N. Kendall Dr.
Miami, FL 33176-1510
Tel.: 305-655-1501
E-mail: despinosa@EspinosaLawGroup.com
E-mail: tallison@EspinosaLawGroup.com

By: */s/ Danny Espinosa*
            Daniel Alberto Espinosa, Esq.
            Florida Bar No. 81686
            Thomas Charles Allison, Esq.
            Florida Bar No. 35242

## CERTIFICATE OF GOOD-FAITH CONFERRAL

The undersigned certifies that he conferred in good faith with Plaintiffs' counsel multiple times regarding the relief herein and, specifically, (via telephone, in person, and in writing) to dismiss this case and to specifically have Defendant, at a bare minimum, withdraw Counts IV–VI of the Amended Complaint and to counsel his clients now to commit any further perjury, but Plaintiffs' counsel has failed to do so as of the date of the filing of this motion and opposes the relief being sought herein.

By: */s/ /Danny Espinosa*
            Daniel Alberto Espinosa, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served via notice of electronic filing, generated upon filing of the foregoing via CM/ECF, this 15th day of December, 2015, upon: Jamie H. Zidell, Esq., zabogado@aol.com, Rivkah Jaff, Esq., rivkah.jaff@gmail.com, and Elizabeth O. Hueber, Esq., Elizabeth.hueber.esq@gmail.com, and upon all other counsel and parties of record.

By: */s/ /Danny Espinosa*
            Daniel Alberto Espinosa, Esq.