## *AFFIDAVIT OF KELLY PHILLIPS*

STATE OF FLORIDA
COUNTY OF MIAMI/DADE

BEFORE ME, the undersigned authority, personally appeared, KELLY PHILLIPS, who deposes and says:

1. I am over the age of eighteen years, and have personal knowledge as to all matters testified to herein.

2. I was formerly employed by attorney George M. Nachwalter as a Legal Assistant in the Law Offices of George M. Nachwalter, P.A. located at 13131 S.W. - 132nd Street, Suite 102, Miami, Florida 33186.

3. On Friday, November 30, 2012, Mr. Nachwalter and I were present when client Robert K. Ashley called by telephone.

4. Mr. Nachwalter represented Mr. Ashley as a beneficiary in the Estate of Robert I. Ashley which was pending in Hillsborough County, Florida.

5. Mr. Nachwalter had this telephone call on speaker phone so I could take part in the conversation. Mr. Nachwalter and I were in Mr. Nachwalter's personal office at the time of this telephone conversation. No one other than Mr. Nachwalter and myself were present in Mr. Nachwalter's personal office during this telephone conversation.

6. Mr. Ashley was calling to inquire about the status of a $31,500.00 partial Distribution, which was received by George M. Nachwalter, Esq. and deposited into George M. Nachwalter, P.A.Trust Account, from The Estate of Robert I. Ashley. More so even, the status of The Order signed by The Judge approving the Distribution.

7. During the November 30, 2012 telephone conversation, Mr. Ashley advised Mr. Nachwalter that he had a copy of The Signed Order from The Judge Approving the $31,500.00 partial distribution. This distribution was supposed to be paid to Accredited Gold and Diamond Brokers, Inc. Which is a company from whom Mr. Ashley had received loans which were secured by his distributions from the Estate of Robert I. Ashley.

8. Mr. Nachwalter told Robert Ashley that he did not feel comfortable releasing the

1

entire $31,500.00 distribution until he himself received a copy of The signed Order, then offered to send $10,000.00 directly to Robert Ashley. Robert Ashley agreed. Mr. Nachwalter asked Robert how he wanted the money sent. Since Mr. Ashley did not have a bank account, he asked Mr. Nachwalter if the money could be wired into his mother's account? Mr. Nachwalter said yes. Mr. Ashley said he would call back with his mother's bank information for wiring purposes.

9. Mr. Ashley then asked Mr. Nachwalter when would the remaining $21,500.00 be sent to Warren Baughn at Accredited Gold and Diamond Brokers, Inc.? Mr. Nachwalter replied"I don't know the answer to that question at this time".

10. I personally spoke to Betty Galletly, Robert Ashley's mom, on November 30, 2012 when she called to give the information needed in order to wire the $10,000.00 as agreed upon between Mr. Nachwalter and Mr. Ashley.

11. By the time I arrived at the bank on the afternoon of November 30, 2012 to wire the money, it was 5:30 p.m. At that time I was informed by the bank personal that it was past the cut-off time for wiring, so I would have to return on Monday, December 3, 2012 before 2:00 p.m.in order to do so.

12. During the November 30, 2012 telephone conversation the only mention about Mr. Nachwalter's fee was: Mr. Ashley said "George you know I don't mind paying you a fee for doing this for me". Mr. Nachwalter replied "Thank you Robert, I appreciate that". No dollar amount was ever mentioned.

13. I know that Mr. Nachwalter's attorney's fees were paid up to date as of May 11, 2012.

14. I do not believe that Mr. Ashley owed attorney's fees of $21,500.00 to Mr. Nachwalter as of November 30, 2012 as Mr. Nachwalter was paid to date as of May11, 2012 and he had not done a significant amount of work on Mr. Ashley's case between May 11, 2012 and November 30, 2012.

15. Mr. Nachwalter's Wife, Simone Nachwalter, was not present during the November 30, 2012 telephone conversation with Mr. Ashley. Simone Nachwalter had been ill and was not at Mr. Nachwalter's office the entire day of November 30, 2012. In fact, at approximately 2:15 p.m. on November 30, 2012, I left Mr. Nachwalter's office in order to pick

2

up Simone Nachwalter at her residence in The Hammocks and drive her to her doctor's appointment with Linda & John Marriccini, MD, in South Miami and of course wait for her in order to bring her back home. After Simone's appointment and on the way to her house is when I went to the bank to do the wire transfer. That is the reason it was so late in the day.

16. On Monday, December 3, 2012, Simone Nachwalter was still out sick. On the way to drop off her lunch at her house, Mr. Nachwalter stopped at the bank so I could send the wire transfer. Once inside I was told since I didn't sign on the account Mr. Nachwalter would have to come in and sign the paperwork, which he did and the wire transfer was completed.

17. While I was employed in Mr. Nachwalter's law office, I never sent out any correspondence on Mr .Nachwalter's behalf without his prior direction and/or approval. Specifically, all correspondence which I sent out regarding Robert K. Ashley and the Estate of Robert I. Ashley was always with Mr. Nachwalter's direction and approval, this includes all documents that I signed and all documents which went out without any signature.

18. After receiving Robert Ashley's Discharge letter, Notice of Substitution of counsel along with Mr. David Ellis' request for a copy of The Ashley Estate File as well as dates in order to schedule a Hearing regarding the $21,500.00 that Mr. Nachwalter was supposed to be holding in his Trust Account, Mr. Nachwalter told me that he needed to take my Deposition or get an Affidavit from me stating that I heard Robert Ashley tell Mr. Nachwalter that he, Mr. Nachwalter could keep the $21,000.00 as his fee. Mr. Nachwalter notice a change in my facial expression and immediately became angry asking me "what's wrong, what is that face for"? I told him that Robert didn't say that. When I tried to explain what I heard, Mr. Nachwalter told me "I don't want to hear anything from you".

19. I told Simone Nachwalter about what Mr. Nachwalter wanted me to do and say about the $21,500.00. I told her that it was not right for him to ask that of me or anyone else. Simone agreed with me but she said "you know how he is, he doesn't (never did) listen to me" "There's nothing I can do about it" then "sorry".

20. Mr. Nachwalter was getting increasingly angry with me. Always yelling at me. I believe that he wanted me to leave his employment so I wouldn't be there to testify when this matter went in front of The Judge, because he knew I wasn't going to lie for him. When he saw I was not going to leave on my own, he fired me on February 1, 2013.

3

21. On or about February 5, 2013, Mr. Nachwalter left a voice message on my Cell phone stating various issues. However, towards the end of the message Mr. Nachwalter is quiet and I hear Simone talking in the background and then Mr. Nachwalter goes oh, okay. Kelly, I wanted to remind you – I don't know what you know or don't know or what you have or don't have, remember everything you know or heard about in this office is privileged information and that means you can't discuss it with anyone, it's illegal to do so and that pertains to you as an employee as well, so again I just want you to know that.

FURTHER Affiant sayeth not.

_____
KELLY PHILLIPS

BEFORE ME, the undersigned authority, personally appeared, **KELLY PHILLIPS**, who is personally known to me or who as produced the following identification: , and who, upon being first duly sworn according to law, deposes and says that she executed the foregoing Affidavit and that the statements made herein are true and correct to the best of her knowledge and belief.

SWORN TO AND SUBSCRIBED before me this 27th day of March, 2013.

_____
NOTARY PUBLIC



LUISA GINSBERG
Notary Public - State of Florida
My Comm. Expires Oct 21, 2015
Commission # EE 108665
Bonded Through National Notary Assn.

4